IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **MAGA BURGER HOLDINGS, LLC, et al.,** Plaintiffs, | § § § § | |
| **v.** | § § | |
| **DTTM OPERATIONS, LLC, et al.,** Intervenor Plaintiffs, | § | |
| v. | § § § | CASE NO.<u>3:25-cv-0313</u> |
| **ROLAND BEAINY, TRUMP BURGER LLC, MAGA BURGER HOLDINGS, LLC, et al.,** Defendants. | § § § § § § § | JURY DEMAND |

**DEFENDANT MAGA BURGER HOLDINGS, LLC'S RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**(RIPENESS AND ARTICLE III STANDING AS TO MAGA BURGER HOLDINGS, LLC)**

## I. INTRODUCTION

1. Intervenor Plaintiffs and Cross-Claimants DTTM Operations, LLC, CIC Operations LLC, and Trump Wine Marks, LLC (collectively, the "Intervenors") ask this Court to do what Article III does not permit: intervene midstream in an ongoing trademark examination and opposition process and direct the United States Patent and Trademark Office ("USPTO") to finally refuse two pending trademark applications.

2. Counts XII and XIII of the Intervenors' Complaint and Crossclaim seek a declaratory judgment and a writ/mandamus-style decree and certified order to the USPTO under 15 U.S.C. § 1119 concerning Application Serial Nos. 99135657 (MAGA BURGER) and 99135667 (a design mark). Those applications are not final agency action. They remain subject to prosecution before the USPTO, including amendment and narrowing, and to inter partes adjudication before the Trademark Trial and Appeal Board ("TTAB").

3. This is not a situation where the PTO has completed its work and the Court is asked to adjudicate the consequences of a registration. To the contrary, the Intervenors have already invoked the TTAB process by instituting an opposition proceeding against Application Serial No. 99135657 (Opposition No. 91305407), and MAGA Burger Holdings, LLC ("MBH") has answered and asserted counterclaims in that proceeding. The TTAB proceeding is active and is the forum Congress designed to adjudicate registrability disputes concerning pending applications.

4. In these circumstances, Counts XII and XIII are unripe because they depend on contingent future events and unresolved administrative action, and because the applications at issue are a moving target that may be amended or narrowed during prosecution and TTAB proceedings. The Court should dismiss Counts XII and XIII under Rule 12(b)(1) for lack of subject matter jurisdiction.

5. Additionally, Intervenors lack Article III standing to pursue all remaining claims against MBH because they fail to plead a concrete injury that is fairly traceable

to MBH's conduct and redressable by relief against MBH, as required to establish subject matter jurisdiction. While standing must be shown on a defendant-specific basis, Intervenors rely on collective "Infringers" group pleading that does not identify any specific acts by MBH itself, instead attributing alleged infringement to a broader group of entities. The allegations acknowledge that MBH is merely a holding company that owns intellectual property and licenses it to separate operating entities, but do not plausibly claim that MBH engages in consumer-facing activities such as operating restaurants, advertising, or selling goods. As a result, any alleged injury—such as consumer confusion or dilution—would arise, if at all, from the independent conduct of third-party operators, breaking the required causal chain and rendering the claims non-traceable to MBH. Similarly, because MBH is not alleged to control the purported infringing conduct, any relief against MBH would not likely redress the alleged injuries, but would instead be advisory or misdirected. Courts routinely reject standing under these circumstances, where plaintiffs fail to tie injury to a particular defendant or rely on speculative inferences about causation and control. Accordingly, because Intervenors have not adequately pleaded traceability or redressability as to MBH, and instead rely on impermissible group pleading that obscures the absence of a concrete case or controversy, the claims against MBH must be dismissed under Rule 12(b)(1) for lack of Article III standing.

## II. BACKGROUND

6. Intervenors allege that MBH filed two service mark applications: Serial No. 99135657 for MAGA BURGER and Serial No. 99135667 for a design mark. Intervenors seek, among other remedies, an order directing the USPTO to finally refuse those applications and to make corresponding entries on the trademark register.

7. Parallel to this litigation, the Intervenors instituted TTAB Opposition No. 91305407 against Application Serial No. 99135657. MBH has answered and asserted defenses and counterclaims in that administrative proceeding. The TTAB proceeding presents the exact question Intervenors ask this Court to decide now: whether the pending application should proceed to registration.

8. Because the TTAB proceeding is underway, registrability is being litigated where Congress placed primary responsibility for applications: inside the USPTO. Meanwhile, the pending applications remain subject to ordinary prosecution events, including office actions, applicant amendments, narrowing of identifications, and disclaimers. Those changes can materially affect the registrability analysis and can narrow the dispute in ways that cannot be predicted on the present pleadings.

## III. LEGAL STANDARD

9. A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Ripeness is a component of Article III's case-or-controversy requirement and is therefore jurisdictional. The Fifth Circuit explains that ripeness "ensure[s] that

federal courts do not decide disputes that are premature or speculative." DM Arbor Court, Ltd. v. City of Houston, 988 F.3d 215, 219 (5th Cir. 2021).

10. The Fifth Circuit applies the *Abbott Laboratories* framework, which asks (1) whether the issues are fit for judicial decision and (2) whether withholding judicial consideration will impose hardship. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715–16 (5th Cir. 2012). Where further factual development or administrative action would place the court in a better position to decide the dispute, the matter is not fit. *Id.*

11. Ripeness also requires a concrete present controversy. The Fifth Circuit has dismissed declaratory actions as unripe where the plaintiff cannot show a specific and concrete threat or present controversy sufficient to satisfy Article III. *Shields v. Norton*, 289 F.3d 832, 835–36 (5th Cir. 2002). And the Fifth Circuit regularly dismisses claims as unripe when the decision-maker with final authority has not acted. See, e.g., *DM Arbor Court*, 988 F.3d at 219–20 (permit dispute unripe absent decision by final arbiter).

12. Unpublished decisions reflect the same approach. *In Dahl v. Village of Surfside Beach*, the plaintiff owned beachfront property and applied for a permit to build a single-family home, but the Village's building official determined that the application was incomplete due to multiple deficiencies, including the absence of a wetlands-delineation report, and no permit was issued. *Dahl v. Vill. of Surfside Beach*, No. 22-40075, slip op. at 2 (5th Cir. Dec. 16, 2022). The plaintiff did not appeal that determination to the Town Council, even though the

municipal code allowed for such an appeal and instead filed suit seeking declaratory relief and asserting that the regulatory requirements effected a taking and were preempted by federal law. Id. at 2–3. The Fifth Circuit held that the claims were not ripe because the Village had never made any decision, let alone a final decision, regarding the permit application, leaving the dispute dependent on further factual development. Id. at 5. The court explained that ripeness requires a concrete and finalized governmental position, and that a claim is not justiciable where it rests on contingent future events or an abstract disagreement over regulations. Id. at 4–5. The court also rejected the plaintiff's futility argument, emphasizing that the plaintiff had not even pursued available administrative remedies, including an appeal that could have addressed the legal objections to the wetlands requirement. Id. at 6. Because no final decision had been rendered and administrative avenues remained open, the court concluded that any alleged injury was speculative and affirmed dismissal of both the declaratory judgment and takings claims as unripe. Id. at 6–7.

## IV. ARGUMENTS

### COUNTS XII and XIII

**A. Counts XII and XIII Are Not Ripe Because They Depend on Ongoing USPTO Action and an Active TTAB Proceeding**

13. Counts XII and XIII ask this Court to determine, in advance of final USPTO action, that MBH's pending applications should be finally refused and that the USPTO be directed to enter that refusal. That request is not fit for judicial

decision because the USPTO has not issued a final determination and because an inter partes TTAB opposition is underway to adjudicate registrability in the first instance.

14. The Fifth Circuit treats disputes as unripe when the body with primary authority has not rendered a final decision. The *DM Arbor* Court held a dispute unripe where the plaintiff had not yet obtained a decision from the final arbiter, emphasizing that ripeness prevents courts from deciding premature or speculative disputes. 988 F.3d at 219–20. The same principle applies here: the USPTO and TTAB are actively engaged in the registrability determination.

15. Intervenors cannot manufacture ripeness by asking for a court order while simultaneously litigating the same registrability question before the TTAB. The existence of an active TTAB opposition confirms that the scope of the controversy has not been reduced to a concrete, final agency posture suitable for judicial resolution.

**B. The Pending Applications Are a Moving Target, Confirming the Dispute Is Not Fit for Judicial Resolution**

16. Trademark applications are inherently dynamic. During prosecution and opposition, applicants may narrow identifications of goods or services, disclaim matter, and make other amendments that materially affect registrability. For that reason, an application's ultimate scope often differs from the pleading-stage snapshot.

17. This case squarely presents the moving target problem. Intervenors ask the Court to order a final refusal of applications that remain subject to amendment and narrowing. Any judicial determination now would rest on an incomplete and potentially outdated record and could be overtaken by routine prosecution events. Under Fifth Circuit ripeness law, that lack of fitness warrants dismissal. *Choice Inc.*, 691 F.3d at 715–16.

**C. Intervenors Seek an Advisory Opinion About a Contingent Future Registration Outcome**

18. Because the USPTO and TTAB proceedings are ongoing, any determination that the applications 'should be finally refused' is necessarily contingent. The agency may refuse on different grounds, sustain or deny the opposition, accept amendments that alter the scope of the application, or otherwise resolve the matter in ways that cannot be known now.

19. The Fifth Circuit has repeatedly required a concrete present controversy before issuing declaratory relief. In *Shields*, the court held the case nonjusticiable where the plaintiff failed to show a specific and concrete threat. 289 F.3d at 835–36. Here, Intervenors seek a prospective ruling about a future registrability outcome, not adjudication of final agency action.

**D. The Hardship Prong Does Not Salvage Counts XII and XIII**

20. The hardship prong requires more than a desire for early judicial involvement. In *Choice Inc.*, the Fifth Circuit affirmed dismissal because plaintiffs failed to show hardship from withholding review. 691 F.3d at 716–18.

21. Intervenors face no cognizable hardship from allowing the TTAB and USPTO to complete their work. Intervenors already have an active TTAB forum to pursue the very relief they seek: preventing registration of the applications. If the USPTO ultimately acts in a manner that Intervenors contend is unlawful, the trademark statutes provide established avenues for review and challenge at the appropriate time.

**E. Section 1119 Does Not Provide a Free-Standing Basis to Direct the USPTO Midstre**

22. Section 1119 provides that '[i]n any action involving a registered mark the court may determine the right to registration ... and otherwise rectify the register.' 15 U.S.C. § 1119. The statute is framed as a remedial provision that operates in actions involving registered marks and allows decrees and orders to be certified to the Director for entry.

23. Counts XII and XIII attempt to use § 1119 as a vehicle for preemptive interference with live applications that remain subject to ongoing agency decision-making.

24. Whatever the outer boundaries of § 1119, it does not convert a pending application into a ripe Article III controversy where registrability is actively being litigated before the TTAB. The Court should not construe § 1119 to invite advisory rulings and intrusion into ongoing PTO processes.

**COUNTS I - XI**

**A. The Intervenors Lack Article III Standing to Pursue Claims Against MAGA Burger Holdings, LLC**

25. Standing is jurisdictional and must be established as to each defendant from whom relief is sought. The party invoking federal jurisdiction bears the burden of proving that standing exists. See *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

26. A plaintiff must show (1) injury in fact, (2) a causal connection between the injury and the challenged conduct of the defendant (traceability), and (3) redressability. Where the alleged injury is the result of independent action by third parties not before the Court, or where a favorable decision would not likely redress the injury, Article III is not satisfied. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Reule v. Jackson*, No. 23-40478 (5th Cir. Aug. 19, 2024) (affirming dismissal where injury not fairly traceable to defendants and not redressable).

27. Intervenors' pleading does not allege a concrete, non-speculative injury that is fairly traceable to MBH's conduct. MBH is a holding company. It holds intellectual property and licenses rights to separately organized operating entities. Intervenors do not allege that MBH operates any restaurant, sells any goods, controls day-to-day advertising, or otherwise engages in consumer-facing commerce. Instead, Intervenors use a collective defined term ('Infringers') and attribute alleged conduct to the group without identifying what MBH itself did.

28. That matters for jurisdiction. Article III standing is defendant-specific. A plaintiff must allege facts showing that the asserted injury is fairly traceable to the conduct of the defendant being sued, not to the independent conduct of other parties. When a complaint fails to connect the injury to a particular defendant, the Court lacks jurisdiction over the claims against that defendant. See Reule, No. 23-40478 (standing fails where injuries are caused by independent actions of third parties).

29. Here, any alleged marketplace confusion, dilution, or publicity-based injury would arise—if at all—from the actions of consumer-facing operators (storefronts, menus, websites, advertising, and point-of-sale use). The complaint does not plausibly allege that MBH itself undertook those acts. Nor does it allege facts sufficient to pierce corporate separateness or to impose liability on a licensor merely because it holds rights that are used by others. As pleaded, Intervenors' injuries are not fairly traceable to MBH and are not likely redressable by relief against MBH.

30. As to MBH, Intervenors have not alleged the constitutional prerequisites for a justiciable controversy—traceability and redressability—so the Court lacks Article III jurisdiction over claims asserted against MBH.

31. Accordingly, the Court should dismiss the Intervenors' claims against MBH under Rule 12(b)(1) for lack of Article III standing.

**B. The "Infringers" Group Pleading Confirms the Absence of a Justiciable Controversy as to MBH**

32. Intervenors repeatedly plead to a collective of alleged 'Infringers' and do not distinctly describe what any particular party does. That collective pleading defect is especially consequential for Article III. A plaintiff must establish standing as to each defendant; collective allegations that do not identify defendant-specific conduct invite speculation about causation and redressability.

33. Where a plaintiff's claimed injury depends on the actions of third parties and the pleading does not identify conduct by the defendant being sued, courts routinely find standing lacking. See, e.g., Reule, No. 23-40478 (no case or controversy where defendants were not the actors causing the injury and relief would not redress it).

34. Because Intervenors' allegations do not tie MBH to any specific infringing use in commerce, any injunction or damages award against MBH would be advisory or misdirected. The Court would be required to infer MBH's conduct, its control over alleged uses, and the causal link to injury. That is inconsistent with Article III.

35. Accordingly, even beyond the ripeness defects that independently require dismissal of Counts XII and XIII, the Court should dismiss all other claims asserted against MBH under Rule 12(b)(1) for lack of a case or controversy as to MBH.

## VI. PRAYER

36. For the foregoing reasons, Defendant MAGA Burger Holdings, LLC respectfully requests that the Court:

    a. Dismiss Counts XII and XIII of the Intervenor Plaintiffs' Complaint and Crossclaim for lack of subject matter jurisdiction under Rule 12(b)(1) (ripeness);

    b. Dismiss all other claims asserted against MAGA Burger Holdings, LLC for lack of subject matter jurisdiction under Rule 12(b)(1) (no Article III case or controversy as to MBH);

    c. Deny Intervenors' requests for a declaratory judgment and for a writ, decree, or certified order directing the USPTO to finally refuse MBH's pending applications; and

    d. Grant MBH such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Michael Spradley
Michael Spradley
Bayou IP PLLC
Texas Bar No. 24067881
S.D. Tex. No. 1206455
1220 Augusta Dr., Suite 174
Houston, Texas 77057
Tel: (713) 728-3687
Email: michael@bayouip.com
CROSS-DEFENDANT MAGA
BURGER HOLDINGS LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2026, a true and correct copy of the foregoing was filed and served through the Court's CM/ECF system on all counsel of record.

/s/ Michael Spradley
Michael Spradley
Bayou IP PLLC
Texas Bar No. 24067881
S.D. Tex. No. 1206455
1220 Augusta Dr., Suite 174
Houston, Texas 77057
Tel: (713) 728-3687
Email: michael@bayouip.com
ATTORNEY FOR
DEFENDANTS/CROSS-
DEFENDANTS MAGA BURGER
HOLDINGS LLC, TRUMP BURGER
LLC, ROLAN BEAINY, MAGA
BURGER BAY CITY INC., and MAGA
BURGER VICTORIA LLC