IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MAGA BURGER HOLDINGS, LLC, TRUMP BURGER LLC, and TRUMP BURGER KEMAH, LLC<br><br>Plaintiffs,<br><br>v.<br><br>409 BRADFORD, LLC, ALL TEX PERSONNEL, LLC, ARCHIE PATTERSON, MAGA BURGER USA, LLC, and MAGA BURGER HOUSTON, LLC,<br><br>Defendants.<br>_____/<br><br>DTTM OPERATIONS, LLC, CIC OPERATIONS LLC, and TRUMP WINE MARKS, LLC,<br><br>Intervenor Plaintiffs/Cross-Claimants,<br><br>v.<br><br>409 BRADFORD, LLC, ALL TEX PERSONNEL, LLC, ARCHIE PATTERSON, MAGA BURGER USA, LLC, MAGA BURGER HOUSTON, LLC, PRESIDENT BURGER LLC F/K/A TRUMP BURGER BELLVILLE, LLC, TRUMP BURGER, LLC, TRUMP BURGER MAGA INC., TRUMP BURGER TEXAS, INC., TRUMP BURGER USA INC., TRUMP BURGER 2024, INC., IYAD ABUELHAWA, SUAD HAMEDAH, TRUMP BURGER CONROE, LLC, TONY WHITE, TRUMP BURGER MONTGOMERY, LLC, MAGA BURGER ATW LLC, MAGA BURGER BAY CITY INC., MAGA BURGER VICTORIA LLC, ROLAND BEAINY, and BARTON RANDOL BLAKELOCK,<br><br>Defendants,<br><br>and | CIVIL ACTION<br>NO. 25-313 |

1

**MAGA BURGER HOLDINGS, LLC, TRUMP BURGER LLC, and TRUMP BURGER KEMAH, LLC,**

**Cross-Defendants.**

_____/

**ROLAND BEAINY, MAGA BURGER BAY CITY, INC. and MAGA BURGER VICTORIA, LLC'S,**

**Counterclaim Plaintiffs,**

**v.**

**DTTM OPERATIONS, LLC, CIC OPERATIONS, LLC and TRUMP WINE MARKS, LLC,**

**Counterclaim Defendants.**

_____/

<u>**INTERVENORS' MOTION TO DISMISS AMENDED COUNTERCLAIMS**</u>
<u>**[ECF NO. 49]**</u>

## **TABLE OF CONTENTS**

I. NATURE AND STAGE OF PROCEEDINGS ..................................................... 6

II. SUMMARY OF ARGUMENT ........................................................................... 8

III. LEGAL STANDARD ...................................................................................... 11

IV. ARGUMENT ................................................................................................... 12

I.      The Cancellation and Partial/Contingent Cancellation Requests in Counts IX, X, XI, and XII Fail Because "Failure to Function" Is Not a Permissible Ground to Cancel These Registrations. Counts IV and VIII, Restated as Declaratory-Judgment Counts on the Same Grounds, Fail for the Same Reasons. ........ 12

II.     Counts I, II, III, IV, and VIII Are Redundant, Mirror-Image Declaratory-Judgment Counterclaims and Should Be Dismissed. .................................................. 21

III.    Counts V, VI, and VII Fail to Plead a Plausible Claim of Abandonment. . 23

IV.     Counts XI and XII Are Unripe and Seek an Impermissible Advisory Opinion. .................................................................................................................. 27

V. CONCLUSION ............................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*Am. Auto. Ass'n, Inc. v. Saga Int'l, Inc.*, No. 4:24-CV-04425, 2025 WL 4350756 (S.D. Tex. Dec. 8, 2025)................................................................................. 10, 21

*Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225 (5th Cir. 2010)......... 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 11

*Assure Re Intermediaries, Inc. v. W. Surplus Lines Agency, Inc.*, No. 1:20-CV-189-H, 2021 WL 2402485 (N.D. Tex. June 11, 2021) ........................................... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 11, 24, 25

*Board of Trustees of State University of New York v. Fox*, 492 U.S. 469 (1989).. 15

*Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184 (5th Cir. 1979) ................................................................................................ 14

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992) ............ 15

*Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997)10, 23, 24, 25, 26

*Garcia v. Glob. Dev. Strategies Inc.*, 44 F. Supp. 3d 666 (W.D. Tex. 2014)11, 25, 27

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) ............................................................................................... 11

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015 (5th Cir. 1996) ....................... 19

*Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234 (S.D. Cal. 2018)...... 13

*Medlin v. State Bar of Texas*, 579 F. Supp. 3d 957 (S.D. Tex. 2020).................... 28

*NetJets Inc. v. IntelliJet Grp., LLC*, 678 F. App'x 343 (6th Cir. 2017)....... 9, 15, 16

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527 (5th Cir. 2015) .............................................................................................. 13

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985). 9, 12, 13, 15, 17

*Pennsylvania State University v. Vintage Brand, LLC*, 715 F. Supp. 3d 602 (M.D. Pa. 2024) ............................................................................................ 14

*Perry v. H.J. Heinz Co. Brands, LLC*, No. CV 19-280, 2019 WL 2423231 (E.D. La. June 10, 2019) ............................................................................... 22

*Savage Tavern, Inc. v. Signature Stag, LLC*, 589 F. Supp. 3d 624 (N.D. Tex. 2022)17

*Shakespeare Co. v. Silstar Corp. of Am.*, 9 F.3d 1091 (4th Cir. 1993) .................. 16

*Sony BMG Music Ent. v. Crain*, No. 1:06-CV-567-TH, 2007 WL 9725180 (E.D. Tex. Sept. 20, 2007) ............................................................................... 22

*Springboards to Education, Inc. v. Houston Independent School District*, 285 F. Supp. 3d 989 (S.D. Tex. 2018), *aff'd on other grounds*, 912 F.3d 805 (5th Cir. 2019)14

*Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005) .. 13

*Texas v. United States*, 523 U.S. 296 (1998) ............................................. 10, 12, 27

*Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684 (5th Cir. 1992)20

*United States v. Abbott*, No. 1:23-CV-853-DAE, 2024 WL 3665747 (W.D. Tex. July 24, 2024) ....................................................................................... 21

*Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*, 504 F. Supp. 2d 260 (N.D. Ohio 2007) .................................................................................. 27

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976) ......................................................................................... 15

*Yacht Basin Provision Co. v. Inlet Provision Co.*, No. 2:22-CV-02180-DCN, 2022 WL 17068795 (D.S.C. Nov. 17, 2022) ........................................... 22

*Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977) .................. 14

**Statutes**

15 U.S.C. § 1051 ........................................................................................... 21

15 U.S.C. § 1052 ........................................................................................... 21

15 U.S.C. § 1064 ...................................................................... 9, 12, 15, 16, 20

15 U.S.C. § 1065 .............................................................................. 17, 18, 20

15 U.S.C. § 1115 ................................................................................ 13, 20, 23

15 U.S.C. § 1119 ...................................................................... 9, 15, 16, 17, 27

15 U.S.C. § 1127 ....................................................................................... 21, 23

28 U.S.C. § 2201 ........................................................................................... 11

**Rules**

Fed. R. Civ. P. 8(a) ...................................................................... passim

Fed. R. Civ. P. 12(b)(1) ............................................................. 6, 9, 12

Fed. R. Civ. P. 12(b)(6) ......................................................... 6, 9, 11, 24

**Other Authorities**

1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 7:24, 7:69

    (5th ed. 2026) ........................................................................... 16

Trademark Manual of Examining Procedure (TMEP) §§ 1202, 1500 *et seq.*, 1604–1605

    ...................................................................................... 17, 21

**COME NOW** Intervenor-Plaintiffs/Cross-Claimants DTTM Operations, LLC, CIC Operations LLC (individually, "CIC"), and Trump Wine Marks, LLC (collectively, the "Trump Organization" or "Intervenors"), by and through their undersigned counsel, and respectfully move this Court, pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6), to dismiss the First Amended Counterclaims [ECF No. 49] (the "Am. Counterclaim") asserted by Counterclaim Plaintiffs Roland Beainy ("Beainy"), MAGA Burger Bay City, Inc. ("MAGA Burger"), and MAGA Burger Victoria, LLC ("MAGA Burger Victoria"), and in support thereof respectfully show the Court the following:

### I. NATURE AND STAGE OF PROCEEDINGS

This is a dispute over ownership of trademarks, trademark infringement, and related claims brought by Beainy's companies, MAGA Burger Holdings, LLC, Trump Burger, LLC, and Trump Burger Kemah, LLC against various parties that are not, in any way, affiliated with or licensed by the movants, the Trump Organization parties. In the original pleadings, MAGA Burger Holdings, LLC, Trump Burger, LLC, and Trump Burger Kemah, LLC claimed to be the owners of the Trump Organization's famous trademarks and brands that comprise or incorporate the well-known terms "TRUMP" and "MAGA" and the phrase "MAKE AMERICA GREAT AGAIN" for use in connection with restaurant services and various items of related merchandise, yet did not include, add, or join any of the movants from the Trump Organization in this lawsuit.

Upon learning that some unrelated third parties were brazenly claiming ownership of its famous marks and were actually suing others based on such outrageous claims, the

7

Trump Organization contacted the various factions in the case to assert its superior rights. Shortly thereafter, it filed a Motion to Intervene and proposed Intervenor Complaint in this action [ECF Nos. 15–27], and was otherwise forced to seek injunctive relief and damages against various parties who have allegedly used, licensed, claimed ownership of, and even tried to register the marks, as well as used the names and likenesses of the Trump family, including Donald J. Trump and Melania Trump. *See, e.g.,* Intervenor Complaint [ECF No. 29].

Various final judgments have been entered in this case, which include permanent injunctive relief in favor of the Trump Organization. While most of the litigants and related parties have either defaulted, settled with the Trump Organization (by way of consent judgment and otherwise), are in the process of settling, and have otherwise ceased use of the marks, one faction persists, namely, Beainy and his companies Trump Burger, LLC, MAGA Burger Holdings, LLC, MAGA Burger Bay City, Inc., and MAGA Burger Victoria, LLC, all of whom are represented by the same law firm.

This Court granted the Motion to Intervene on April 7, 2026 [ECF No. 28], making the Intervenor Complaint [ECF No. 29] the operative pleading of the Trump Organization parties. Counterclaim Plaintiffs Roland Beainy, MAGA Burger Bay City, Inc., and MAGA Burger Victoria, LLC (collectively, "Counterclaim Plaintiffs") filed their First Amended Answer, Affirmative Defenses, and Counterclaims [ECF No. 49] on June 8, 2026, which is their operative pleading and the subject of this Motion to Dismiss.

The Counterclaim itself describes the registrations at issue. It acknowledges that U.S. Registration No. 4,773,272 and U.S. Registration No. 5,020,556 carry Section 8 and

accepted-and-acknowledged status (dated June 24, 2022 and March 3, 2023, respectively); that is, that they are incontestable. (Am. Counterclaim [ECF No. 49] ¶ 21.) The two registrations targeted for cancellation in Counts IX and X, U.S. Registration No. 5,885,602 (Class 18 goods) and U.S. Registration No. 5,921,166 (Class 18 and 25 goods), are alleged to be "live registrations" (which public records show to be inaccurate). (Id. ¶¶ 22–23.) Counterclaim Plaintiffs further concede that they "do not seek relief barred by incontestability." (Id. ¶ 20.)

The pleading asserts twelve counts. Counts I through IV and VIII seek declaratory judgments that Intervenor Plaintiffs are not using the phrase as a source identifier, that there is no likelihood of confusion, that there is no dilution, that the use is ornamental and non-source-identifying, and that any rights are limited to bona fide trademark use. (Am. Counterclaim [ECF No. 49] ¶¶ 34–52, 68–71.) Counts V through VII seek declarations of abandonment by loss of significance, failure to police, and naked licensing. (Id. ¶¶ 53–67.) Counts IX and X seek cancellation of the two registrations for "failure to function" as a trademark. (Id. ¶¶ 72–84.) Counts XI and XII seek declarations regarding incontestability and, "in the alternative," partial cancellation.

## II. SUMMARY OF ARGUMENT

Counterclaim Plaintiffs have met a straightforward trademark ownership dispute with a sprawling set of twelve counterclaims that, however they are labeled, all rest on a single, legally untenable premise: that because MAKE AMERICA GREAT AGAIN is allegedly "political," it cannot be a trademark and the registrations covering it cannot be enforced and should be cancelled. That premise is erroneous, and all twelve counts fail as

a matter of law on the face of the pleading. The Court should dismiss all twelve under Rules 8(a), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

Counts IX and X, together with the contingent cancellation requests embedded in Counts XI and XII, ask the Court to strip federal registrations on the theory that the mark "fails to function" as a trademark because it is ornamental, informational, or political. The Lanham Act flatly forecloses that theory. Failure to function and related bases are not permissible grounds to cancel a registration that is more than five (5) years old. Section 14 enumerates the exclusive grounds for cancellation after five (5) years, and failure to function is nowhere among them. 15 U.S.C. § 1064. The Supreme Court squarely so held in *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985), and the rule binds a court asked to cancel under 15 U.S.C. § 1119 with equal force. *NetJets Inc. v. IntelliJet Grp., LLC*, 678 F. App'x 343, 348 (6th Cir. 2017). Counterclaim Plaintiffs acknowledge this bar—or, at the very least, the significance of the incontestable status of the registrations they seek to cancel and defend against—in their own Am. Counterclaim at Paragraphs 20– 21.

Counts I, II, III, IV, and VIII are nothing more than mirror-image declaratory-judgment counterclaims. They ask the Court to declare the negative of the very infringement and dilution claims already before it: that there is no source-identifying use, no likelihood of confusion, no dilution, only ornamental use, and rights limited to bona fide trademark use, and they duplicate, nearly verbatim, the affirmative defenses Counterclaim Plaintiffs have already pleaded. Courts in this Circuit routinely dismiss

10

precisely these redundant counterclaims. *Am. Auto. Ass'n, Inc. v. Saga Int'l, Inc.*, No. 4:24-CV-04425, 2025 WL 4350756 (S.D. Tex. Dec. 8, 2025).

The declaratory judgment claims of Counts IV and VIII separately fail because of the same five-year bar and incontestability statutes. There is no relevance, point, or need for a judicial declaration that trademarks are ornamental, informational and non-source identifying if those are not bases for cancellation of incontestable trademark registrations, which constitute conclusive evidence of validity, ownership, and exclusive rights.

Count II is additionally deficient in that it conflates the two elements of trademark infringement and unfair competition, and therefore fails to state a cognizable claim.

The abandonment counts, Counts V, VI, and VII, plead conclusions in place of facts, and several rest expressly "on information and belief." They come nowhere near overcoming the statutory presumption that the registrations are valid, and they fall far short of the stringent showing the Fifth Circuit demands to establish abandonment by loss of significance, failure to police, or naked licensing by clear and convincing evidence. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997).

Counts XI and XII are not justiciable at all. By their own terms they are contingent on future "discovery, motion practice, or other declaratory judgment," and they reach unidentified "additional" registrations that are not before the Court. A federal court may not issue the advisory opinion these counts request. *Texas v. United States*, 523 U.S. 296 (1998). The counterclaims should be dismissed in their entirety.

11

### III. LEGAL STANDARD

Rule 8(a) requires, among other things, that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Garcia v. Glob. Dev. Strategies Inc.*, 44 F. Supp. 3d 666, 669 (W.D. Tex. 2014). That standard governs a trademark cancellation or abandonment counterclaim like any other claim for relief. *Id.*

Pleadings must contain enough factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, if the allegations in the pleading do not plausibly entitle the claimant to relief even if true, the complaint must be dismissed. *See Twombly*, 550 U.S. at 558. District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable, or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

The Declaratory Judgment Act, 28 U.S.C. § 2201, separately confers "broad, but not unfettered, discretion to decide, or dismiss, a request for declaratory judgment," and courts decline to entertain declaratory claims that "would be redundant in light of the affirmative causes of action before the Court." *Assure re Intermediaries, Inc. v. W. Surplus*

*Lines Agency, Inc.*, No. 1:20-CV-189-H, 2021 WL 2402485, at \*2 (N.D. Tex. June 11, 2021). Under Rule 12(b)(1), a claim resting upon "contingent future events that may not occur as anticipated, or indeed may not occur at all" is not ripe and must be dismissed. *Texas v. United States*, 523 U.S. 296, 300 (1998).

## IV. ARGUMENT

### I.  The Cancellation and Partial/Contingent Cancellation Requests in Counts IX, X, XI, and XII Fail Because "Failure to Function" Is Not a Permissible Ground to Cancel These Registrations. Counts IV and VIII, Restated as Declaratory-Judgment Counts on the Same Grounds, Fail for the Same Reasons.

a.  Cancellation and Partial/Contingent Cancellation Claims
Counts IX, X, XI, and XII

The Lanham Act does not permit cancellation of a mature registration on a "failure to function" theory, and no amount of relabeling can change that. A petition to cancel on grounds of non-distinctiveness may be brought only "[w]ithin five years from the date of the registration of the mark." 15 U.S.C. § 1064. After five years, a registration may be cancelled only on the limited grounds Congress enumerated in Section 14(3): that the mark has become generic, is functional, has been abandoned, was obtained fraudulently, or is being used to misrepresent source. *Id.* Failure to function, ornamentality, and non-source-identifying use appear nowhere on that list.

The Supreme Court confirmed precisely this limitation. In *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985), the Court held that, without regard to its incontestable status, a mark registered for five years "is protected from cancellation except on the grounds stated in" Section 14, and that a mark "may be canceled on the grounds that it is merely descriptive only if the petition to cancel is filed within five years of the date of

registration." *Id.* at 198. The same reasoning forecloses any non-distinctiveness/failure to function challenge to an incontestable registration: "[m]ere descriptiveness is not recognized by either § 15 or § 33(b) as a basis for challenging an incontestable mark." *Id.* at 196.

Merely descriptive marks (like those which are the subject of *Park 'N Fly*) are simply another type of mark that fails to function as source-identifying trademarks. As explained in *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005), a mark that is merely descriptive (absent proof of secondary meaning) fails to function as a valid, protectable trademark because it does not serve to identify a particular source of a product or service. *Id.* at 566; *see also Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 541 (5th Cir. 2015) (distinguishing between marks that function as an indication of source and mere ornamentation). Although the marks in *Test Masters* and *Nola Spice* were not incontestable, the opinions nonetheless explain the function of a trademark as distinguished from other kinds of words and phrases.

Other district courts have applied the holding and analysis of *Park 'N Fly* specifically to bar attacks on incontestable marks on ornamentality grounds. *See Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1264 (S.D. Cal. 2018) (citing *Park 'N Fly* and 15 U.S.C. § 1115(b) referring to the legislature "omitting mere descriptiveness or mere ornamentality from list of permissible defenses to incontestable registrations…The absence of mere descriptive and ornamentality counterclaims to the All in One mark '967 and '417 registrations ostensibly reflects Defendants' awareness that they cannot challenge the registrations on those *grounds"); see also Pennsylvania State*

*University v. Vintage Brand, LLC*, 715 F. Supp. 3d 602, 640 (M.D. Pa. 2024) ("As an initial matter, as noted above, several of the marks that Penn State seeks to protect are incontestable. Incontestable registrations may only be challenged on limited grounds, and a defendant cannot defend against trademark infringement claims for incontestable registrations 'on the ground that they are merely' ornamental."). The district court in the *Vintage Brand* case held squarely (albeit as to affirmative defenses) that "the marks that Penn State seeks to enforce . . . are incontestable, and Vintage Brand cannot challenge Penn State's trademark infringement claims 'on the ground that [the marks] are merely' ornamental." *Id*. at 665.

As to Counterclaim Plaintiffs' other "failure to function" type arguments, they are also foreclosed for the same reasons above, most importantly, that they are not within the limited statutory exceptions to incontestability. The Fifth Circuit has long held that "[t]he first amendment is not a license to trammel on legally recognized rights in intellectual property." *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.,* 600 F.2d 1184, 1188 (5th Cir. 1979) (citing *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 577 & n.13 (1977) concerning copyrights). This Court has likewise recognized that "[a] trademark is a constitutionally protectable property interest." *Springboards to Education, Inc. v. Houston Independent School District*, 285 F. Supp. 3d 989, 996 (S.D. Tex. 2018), *aff'd on other grounds*, 912 F.3d 805 (5th Cir. 2019), *as revised* (Jan. 29, 2019), *as revised* (Feb. 14, 2019).

The Ninth Circuit Court of Appeals has held that the First Amendment does not bar the enforcement of valid trademark rights. *See E. & J. Gallo Winery v. Gallo Cattle Co.*,

967 F.2d 1280, 1297 (9th Cir. 1992). Moreover, misleading commercial speech, specifically words that "tended to mislead and confuse consumers about the source of the product" can be restricted without violating the First Amendment. *Id*. at 1297 (*citing Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771–73 (1976), and *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 475 (1989)) (other citations omitted).

The United States Supreme Court made it clear in *Park 'N Fly* that after five (5) years, these types of arguments are barred by 15 U.S.C. § 1064. *Park 'N Fly*, 469 U.S. at 196. Accordingly, none of Counts IX, X, XI, or XII alleges a basis for cancellation that is permitted by the Lanham Act. They are all fatally flawed and should be dismissed with prejudice.

The five-year bar applies with full force to a court asked to cancel under 15 U.S.C. § 1119. The Supreme Court held that the courts' power to "cancel registrations" and "otherwise rectify the register" "must be subject to the specific provisions concerning incontestability." *Park 'N Fly*, 469 U.S. at 203. A court's cancellation power under § 1119 is, in turn, "subject to" and "limited to the grounds listed in" Section 1064. *NetJets Inc. v. IntelliJet Grp., LLC*, 678 F. App'x 343, 348 (6th Cir. 2017). Applying that reasoning under the current statute, *NetJets* held that a ground not enumerated in Section 1064(3) cannot support cancellation of a registration more than five years old, and on that basis barred a non-enumerated "void *ab initio*" theory. *Id.* at 347–49. Counterclaim Plaintiffs' "failure to function" theory is likewise absent from Section 1064(3) and fails for the same reason.

16

The Fourth Circuit reached the same § 1119/§ 1064 conclusion in *Shakespeare Co. v. Silstar Corp. of Am.*, 9 F.3d 1091, 1097–98 (4th Cir. 1993), although that decision's separate holding that functionality could not support cancellation was later partially superseded when the 1998 Trademark Law Treaty Implementation Act added functionality to § 1064(3). *NetJets*, 678 F. App'x at 349. That superseded holding is, in any event, beside the point, because the "functionality" at issue in *Shakespeare* is a different doctrine from the "failure to function" theory Counterclaim Plaintiffs assert here. Utilitarian functionality concerns a product's features: "a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 7:69 (5th ed. 2026). Failure to function asks an entirely different question—whether the matter identifies source at all—and a designation that is "solely or merely ornamental and does not also identify and distinguish source" cannot be a valid mark. *Id.* § 7:24.

Counts IX and X plead only that the mark is displayed "as a slogan and political message" and therefore "does not function as a trademark." (Am. Counterclaim [ECF No. 49] ¶¶ 74, 80.) That is a textbook non-distinctiveness theory, available, if at all, only within the first five years of registration. Because U.S. Registration Nos. 5,885,602 and 5,921,166 issued in 2019, more than five years before the June 2026 counterclaim, the theory is time-barred and Counts IX and X must be dismissed with prejudice. The contingent or partial cancellation requests in Counts XI and XII fail for the identical reason. Moreover, Counterclaim Plaintiffs cannot escape the separate incontestability framework, because a

17

Section 1119 cancellation "must be subject to the specific provisions concerning incontestability." *Park 'N Fly*, 469 U.S. at 203.

Counterclaim Plaintiffs themselves underscore the problems with their claims for cancellation of these incontestable trademark registrations in Paragraphs 20–21 of the Am. Counterclaim. They allege:

> To the extent any registration has actually achieved incontestable status under 15 U.S.C. § 1065, Counter-Petitioners do not seek relief barred by incontestability…On the present public record, U.S. Registration No. 4,773,272 [*subject of the original Counterclaim [ECF No. 47]*] is shown with a Section 8 and 15 accepted-and-acknowledged status dated June 24, 2022, and U.S. Registration No. 5,020,556 [*subject of the original Counterclaim [ECF No. 47]*] is shown with a Section 8 and 15 accepted-and-acknowledged status dated March 3, 2023. By contrast, U.S. Registration Nos. 5,885,602 and 5,921,166 are shown as live registrations, but the presently available records do not show the same accepted-and-acknowledged incontestability status for those registrations. Accordingly, this cancellation section is directed to at least U.S. Registration Nos. 5,885,602 and 5,921,166.

*See* Am. Counterclaim [ECF No. 49] ¶¶ 20–21 (emphasis added).[1]

---

[1] The Trademark Manual of Examining Procedure (TMEP) § 1202 (Oct. 2018) "outlines the procedures which Examining Attorneys are required or authorized to follow in the examination of trademark applications," and the Principal Register—where previously registered marks are published. Foreword, Trademark Manual of Examining Procedure (July 2021 ed.), available at https://tmep.uspto.gov/RDMS/TMEP/current." *Savage Tavern, Inc. v. Signature Stag, LLC*, 589 F. Supp. 3d 624, 641 (N.D. Tex. 2022). The TMEP also applies to post-registration procedures and requirements. *See* TMEP §§ 1500, et seq.

The USPTO permits the filing of a combined declaration of continued use or excusable nonuse under Section 8 of the Trademark Act (required to maintain a 5-year old registration) with an optional affidavit/declaration of incontestability after five years of registration. *See* TMEP §§ 1604–1605. The USPTO reviews such declarations and then, usually months later, issues Notices of Acceptance and Acknowledgement of these filings, provided that, according to the USPTO's review, they meet certain statutory requirements, namely, filing fees, a declaration under penalty of perjury that the mark has been in continuous use for five years, an example/specimen of the registrant's current use of the mark in commerce, a separate recitation of the goods and services upon which the

Counterclaim Plaintiffs made a specific point of highlighting to the Court the fact that the United States Patent and Trademark Office ("USPTO") "accepted-and-acknowledged" the affidavits/declarations of incontestability under Section 15 of the Trademark Act, 15 U.S.C. § 1065, that they are therefore no longer seeking cancellation of those incontestable registrations, and that they limit "this cancellation section . . . to at least U.S. Registration Nos. 5,885,602 and 5,921,166." *Id*. ¶ 21.

Despite the vague, unclear, and inartful pleading of this contention, reading it in the light most favorable to Counterclaim Plaintiffs, they acknowledge, in their own pleading, the significance of the declarations of incontestability of the registrations, the USPTO's acknowledgement and acceptance of same, and the fact that their decision to curtail their cancellation claims was based thereon. Despite the inclusion of the vague language "at least" in Paragraph 21, upon further examination of the Am. Counterclaim, it is clear that it omits two of the four originally challenged incontestable registrations from the cancellation counts, namely, Registration Nos. 4,773,272 and 5,020,556. *Compare* [ECF Nos. 47 and 49]. The Prayer section of the original counterclaim included a request to cancel all four registrations. Paragraphs 20–21 of the Am. Counterclaim amount to an admission that, given these acknowledgements and acceptances in the public record of the USPTO, they dropped their claims for cancellation of two of the four registrations.

---

registered mark is still used, and a further declaration that there have been no adverse decisions or pending proceedings involving rights in the mark at the time of filing. *Id.* If, after its review of the combined declaration, the USPTO concludes that these requirements have not been met, the USPTO will not issue a notice of acceptance or acknowledgement.

However, contrary to Counterclaim Plaintiffs' allegations and arguments contained in the Am. Counterclaim, the USPTO did, in fact, acknowledge and accept CIC's filing of declarations of continued use and incontestability for *all four (4)* of CIC's incontestable trademark registrations for the mark MAKE AMERICA GREAT AGAIN asserted in this case—including those Counterclaim Plaintiffs still seek to cancel and related declarations in the Am. Counterclaim. *See* Notices of Acceptance under Section 8 and Notices of Acknowledgement under Section 15 attached as *Composite **Exhibit "1"*** hereto.[2]

b.  Declaratory Judgment Claims – Counts IV and VIII

Counts IV and VIII fail for the same reason the cancellation counts fail. There is no relevance, point, or need for a declaration that trademarks are ornamental, informational or non-source identifying if those are not bases for cancellation of incontestable trademark registrations, which constitute conclusive evidence of validity, ownership, and exclusive rights.

The Trump Organization parties alleged numerous incontestable TRUMP and MAGA marks in the Intervenor Complaint. Since cancellation of the Trump Organization's incontestable trademarks is now barred, "the registration[s] shall be *conclusive* evidence of the validity of the registered mark and of registration of the mark, and of the registrant's

---

[2] The Trump Organization contends that the Am. Counterclaim warrants dismissal without reference to any materials outside the pleading itself. However, Counterclaim Plaintiffs open the door to the Court taking judicial notice of the public records of the USPTO with regard to CIC's four trademark registrations for the mark MAKE AMERICA GREAT AGAIN, particularly, as to the alleged absence or existence of the Notices of Acceptance under Section 8 and Notice of Acknowledgement Under Section 15 of the Trademark Act reflected in the public record given the allegations directly referencing such public USPTO records. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996).

ownership of the mark and of the registrant's exclusive right to use the registered mark in commerce" (subject only to limited defenses and defects, none of which have been pled in Counts IV, VIII, IX, X, XI, or XII). 15 U.S.C. § 1115(b) (emphasis added). Therefore, the Declaratory Judgment Counterclaims of Counts IV and VIII, which are based on the same alleged "failure to function" facts, namely, "ornamentality," "informational," "political," "non-source identifying," are also fatally and irreparably flawed.

An attack on a registered trademark more than five years after the date of publication of its initial registration, regardless of whether it is incontestable, may only be brought on grounds enumerated under 15 U.S.C. § 1064. *See Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 690 (5th Cir. 1992). In *Texas Pig Stands*, the Court of Appeals for the Fifth Circuit held:

> Once a mark has become incontestable under § 1065, the registration constitutes "conclusive evidence" of the registrant's right to use the mark, "subject only to the seven defenses enumerated in 15 U.S.C. § 1115(b)." . . . Prior use by a third party that does not continuously extend up until the time of trial does not fall within one of the enumerated defenses.

*Id.* at 690. Similarly, failure to function as a trademark is not one of the enumerated grounds. The grounds alleged in the Counterclaim are not among those "always-available" bases enumerated in 15 U.S.C. § 1064(3)–(6) and are therefore time-barred. "Generally, the failure-to-function refusal is a specimen-based refusal." TMEP § 1202. It is, by its nature, an examination-stage ground rooted in §§ 1, 2, and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052, and 1127, and not an "always-available" cancellation basis. The five-year deadline to make these specimen-based and ornamentality-based attacks—

21

whether by declaration, defense, or cancellation claim—on the incontestable marks has long passed.

## II. Counts I, II, III, IV, and VIII Are Redundant, Mirror-Image Declaratory-Judgment Counterclaims and Should Be Dismissed.

Courts in this Circuit "regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the plaintiff's affirmative claims," and "typically dismiss declaratory judgment counterclaims that are mirror images of claims or that raise issues that turn on disputed facts that will be resolved in the underlying lawsuit." *United States v. Abbott*, No. 1:23-CV-853-DAE, 2024 WL 3665747, at *3 (W.D. Tex. July 24, 2024). A declaratory-judgment counterclaim "should be dismissed as redundant . . . when resolution of the plaintiff's substantive claim along with the defendant's affirmative defenses would necessarily resolve all issues raised by the declaratory-judgment counterclaim." *Am. Auto. Ass'n, Inc. v. Saga Int'l, Inc.*, No. 4:24-CV-04425, 2025 WL 4350756, at *2 (S.D. Tex. Dec. 8, 2025).

A directly analogous trademark case from this very district proves the point. In *Am. Auto. Ass'n*, the court dismissed a defendant's declaratory counterclaim of non-infringement as a "mirror image" of the plaintiff's infringement claims, because resolution of the plaintiff's substantive claims "resolves the issues raised by" the counterclaim. *Id.* at *3. As another court put it, a non-infringement counterclaim that "raises no legal or factual issues outside those raised by plaintiffs' complaint" is "simply plaintiff's claim recast from the perspective of defendant." *Sony BMG Music Ent. v. Crain*, No. 1:06-CV-567-TH, 2007 WL 9725180, at *3 (E.D. Tex. Sept. 20, 2007).

22

Counts I, II, III, IV, and VIII are exactly that and nothing more. They seek declarations of no source-identifying use, no likelihood of confusion, no dilution, ornamental use, and rights limited to bona fide use, each the precise negative of an affirmative claim Intervenor Plaintiffs already assert. (Am. Counterclaim [ECF No. 49] ¶¶ 34–52, 68–71.) Resolving the infringement and dilution claims will necessarily resolve every issue these counts raise.

These counts are equally duplicative of Counterclaim Plaintiffs' own affirmative defenses, which assert the identical propositions almost word for word: failure to function, no trademark use, no likelihood of confusion, no dilution, and limited scope of rights. (Am. Counterclaim [ECF No. 49] ¶¶ 153, 155, 156, 163.) Courts dismiss declaratory counterclaims that "seek the same result as defendant's denials and affirmative defenses," *Sony BMG*, 2007 WL 9725180, at *3, because "counterclaims that mimic affirmative defenses are no less duplicative than counterclaims that mirror the plaintiff's request for declaratory relief." *Yacht Basin Provision Co. v. Inlet Provision Co.*, No. 2:22-CV-02180-DCN, 2022 WL 17068795, at *5 (D.S.C. Nov. 17, 2022). Where, as here, the counterclaims add no additional rights, they are superfluous and should be dismissed. *Perry v. H.J. Heinz Co. Brands, LLC*, No. CV 19-280, 2019 WL 2423231, at *3 (E.D. La. June 10, 2019).

Finally, Count II of the Am. Counterclaim, which seeks a declaratory judgment of "no likelihood of confusion," conflates the elements of the cause of action. While Count II literally seeks a declaration of no likelihood of consumer confusion, it seeks the declaration on the basis that the Trump Organization is not using the mark in a source-identifying manner and therefore lacks valid trademark rights. Ownership of a valid mark and

23

likelihood of consumer confusion are two separate elements of the causes of action for trademark infringement and unfair competition that must be proven (and defended) separately. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010). This lack of clarity and conflation in Count II creates a separate, additional basis for dismissal under Fed. R. Civ. P. 8(a).

### III.      Counts V, VI, and VII Fail to Plead a Plausible Claim of Abandonment.

A federal registration is at least "prima facie evidence of the validity of the registered mark," of the registrant's ownership, and of its exclusive right to use the mark. 15 U.S.C. § 1115. To plead around that presumption, a challenger must allege facts establishing abandonment, a showing the Fifth Circuit polices strictly. Abandonment under 15 U.S.C. § 1127 requires that, "due to acts or omissions of the trademark owner, the . . . mark has lost its significance as a mark." *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1075 (5th Cir. 1997). A "defense of abandonment must be proven by clear and convincing evidence." *Id.* at 1075. Counts V through VII do not come close to that threshold. Such bold and overreaching claims require, at the very least, far more detailed facts and specificity under Rules 8(a) and 12(b)(6) and the *Twombly* standard.

*Loss of significance (Count V).* The pleading alleges that the phrase, at some point in time, became a political slogan and thereby lost significance as a mark. However, "if a trademark has not ceased to function as an indicator of origin," there is no abandonment. *Exxon*, 109 F.3d at 1075.

24

The Am. Counterclaim does not specify a point in time, after the trademark rights were established or registered by the USPTO, that the use allegedly changed in character, and lost its legal significance. The pleading fails even to hint at when this loss of significance allegedly happened, much less in relation to the commencement of the complained-of conduct. In other words, the pleading lacks sufficient specificity for the Court or the Trump Organization to identify the time of this alleged loss as compared to times when Counterclaim Plaintiffs began using, began licensing, or began attempting to register the marks for themselves.

Counterclaim Plaintiff Beainy caused his business entities to initiate this lawsuit, originally claiming that the TRUMP BURGER and MAGA BURGER marks were, in fact, protectable and were also owned by his companies. Temporal specificity as to when he and his co-counterclaimants (all owned or controlled by him) *now* claim these similar marks to have lost their protection and trademark significance is essential. In this context, its absence is a glaring omission from their pleading. This claim runs afoul of Rule 8(a) and is implausible under *Twombly*, as pled.

The Am. Counterclaim also lacks any allegation identifying any specific goods or services for which that significance and resulting protection was allegedly lost.  The counterclaim alleges no facts showing the mark has lost all source significance for the registered goods; instead, it offers only the bare conclusion that the phrase is "political." That is precisely the kind of "labels and conclusions" that cannot survive a motion to dismiss. *Garcia*, 44 F. Supp. 3d at 669. These labels and conclusions also fail to meet the

25

"short and plain statement" of the claim showing that the pleading is entitled to relief under Rule 8(a) of the Federal Rules of Civil Procedure or *Twombly's* plausibility standard.

*Failure to police (Count VI).* First, the allegations of this claim are partially unintelligible. Count VI begins with the averment that "Plaintiffs and those through whom they claim have permitted widespread third-party use of MAKE AMERICA GREAT AGAIN…." (Am. Counterclaim [ECF No. 49] ¶ 59.) For purposes of this Motion, movants treat this claim as directed to, at the least, all of the Intervenor Plaintiffs: CIC, DTTM Operations, LLC, and Trump Wine Marks, LLC.

As Paragraph 60 of the Am. Counterclaim expressly acknowledges, "a trademark owner's failure to pursue potential infringers does not in and of itself establish that the mark has lost its significance as an indicator of origin." *Exxon*, 109 F.3d at 1080. Abandonment by failure to police results "only where the mark has lost all significance as an indication of source or sponsorship through widespread unauthorized use." *Garcia*, 44 F. Supp. 3d at 672. The contrast with *Garcia* is instructive: there, the counterclaim survived only because it identified "at least 325 third-party federal registrations" and "more than a dozen" specific third-party businesses using the term. *Id.* Count VI pleads no comparable particulars, only a generalized assertion, "on information and belief," of supposed widespread third-party use. (Am. Counterclaim [ECF No. 49] ¶¶ 19, 59–61.)

The Am. Counterclaim does not distinguish between the Trump Organization parties/Counterclaim Defendants, nor does it identify a single third-party user of the mark, allege any facts regarding the Trump Organization parties' knowledge, consent, specific lawsuits or other proceedings, or the inadequacy of any specific act of policing. Again, the

pleading only offers conclusions. Given the absence of such basic facts, the plausibility of the pleading cannot even be adequately assessed. Since plausibility is Counterclaim Plaintiffs' burden, this Count should also be dismissed.

*Naked licensing (Count VII)*. A naked license is "a trademark licensor's grant of permission to use its mark without attendant provisions to protect the quality of the goods," and the burden to prove abandonment on this theory is "stringent." *Exxon*, 109 F.3d at 1075. The Fifth Circuit refuses to "presume a loss of trademark significance" from licensing. *Id.* Count VII identifies no licensee, no license, and no quality-control failure whatsoever; it rests entirely on unspecified "information and belief." (Am. Counterclaim [ECF No. 49] ¶¶ 64–66.)

The Am. Counterclaim fails to distinguish between the Trump Organization entities/Counterclaim Defendants. It also fails to name an alleged licensee or third-party user, any improper license agreement, or any consent or authorization by any of the Counterclaim Defendants, collectively or individually. Such conclusory allegations cannot state a plausible naked-licensing cause of action, nor constitute the framework for a claim that is required to be proven by clear and convincing evidence. *See Garcia*, 44 F. Supp. 3d at 669.

## IV.    *Counts XI and XII Are Unripe and Seek an Impermissible Advisory Opinion*.

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Counts XI and XII are contingent on their face. They seek

cancellation only "if discovery, motion practice, or other declaratory judgment shows" that some registration is not incontestable, and they target "any additional" MAKE AMERICA GREAT AGAIN registration not even identified in the pleading. (Am. Counterclaim [ECF No. 49] ¶¶ 90, 93.) That is the paradigm of a claim resting on contingent future events, and it is not fit for adjudication. *Texas*, 523 U.S. at 300.

The cancellation request independently fails because § 1119 reaches only an existing registration actually placed in controversy. "[I]n virtually every case" recognizing § 1119 authority, the determination "was tied directly to a challenge to an existing competing registration or a claim of infringement based on an existing registration." *Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*, 504 F. Supp. 2d 260, 269 (N.D. Ohio 2007). Counts XI and XII, aimed at phantom "additional" registrations, are untethered to any such controversy.

Finally, to the extent the declaratory counts ask the Court to declare in advance that the Trump Organization parties cannot carry their burden of proof, they seek the very advisory opinion the Court "may not give." *Medlin v. State Bar of Texas*, 579 F. Supp. 3d 957, 963 (S.D. Tex. 2020). For all these reasons, Counts XI and XII should be dismissed.

## V. CONCLUSION

For the foregoing reasons, Counterclaim Defendants DTTM Operations, LLC, CIC Operations LLC, and Trump Wine Marks, LLC respectfully request that the Court dismiss Counterclaim Plaintiffs' First Amended Counterclaims (Counts I through XII) in their entirety, with prejudice, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

**500law**
*Attorneys for*
*Intervenor Plaintiffs/Counterclaim Defendants*
Museum Plaza
200 South Andrews Avenue, Suite 100
Fort Lauderdale, Florida 33301
Telephone: (954) 351-7474

By:   /s/ Salvatore Fazio
      **Michael Santucci, Esq.**
      Fla. Bar No.: 105260
      Primary E-mail: mis@500law.com
      Secondary E-mail: docketing@500law.com
      **Salvatore Fazio, Esq.**
      Fla. Bar No. : 127525
      Primary E-mail: sfazio@500law.com
      Secondary E-mail: docketing@500law.com

Attachments :
Composite Exhibit 1 – USPTO Public Records

29

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2026, a true and correct copy of the foregoing was served on counsel of record for Counterclaim Plaintiffs via email at the following address(es):

Michael Spradley
Bayou IP PLLC
1220 Augusta Dr, Ste 174
Houston, Texas 77057
Tel: (713) 728-3687
Email: michael@bayouip.com

**500law**
*Attorneys for*
*Intervenor Plaintiffs/Counterclaim Defendants*
Museum Plaza
200 South Andrews Avenue, Suite 100
Fort Lauderdale, Florida 33301
Telephone: (954) 351-7474

By:   /s/ Salvatore Fazio
**Michael Santucci, Esq.**
Fla. Bar No.: 105260
Primary E-mail: mis@500law.com
Secondary E-mail: docketing@500law.com
**Salvatore Fazio, Esq.**
Fla. Bar No. : 127525
Primary E-mail: sfazio@500law.com
Secondary E-mail: docketing@500law.com

30