**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **MAGA BURGER HOLDINGS, LLC, et al.,** | § | **CIVIL ACTION NO. 3:25-cv-00313** |
| Plaintiffs, | § | **JURY DEMANDED** |
| v. | § | |
| **DTTM OPERATIONS, LLC, et al.,** | § | |
| Intervenor Plaintiffs/Cross-Claimants, | § | |
| v. | § | |
| **ROLAND BEAINY, TRUMP BURGER LLC, MAGA BURGER HOLDINGS, LLC, MAGA BURGER BAY CITY INC., MAGA BURGER VICTORIA LLC, et al.,** | § | |
| Defendants/Cross-Defendants. | § | |

**DEFENDANTS/CROSS-DEFENDANTS' COMBINED RESPONSE IN OPPOSITION TO INTERVENOR PLAINTIFFS' MOTION TO STRIKE SECOND AMENDED AFFIRMATIVE DEFENSES AND MOTION TO DISMISS SECOND AMENDED COUNTERCLAIMS [ECF NO. 105]**

# TABLE OF CONTENTS

**I. NATURE AND STAGE OF PROCEEDINGS......1**

**II. SUMMARY OF THE ARGUMENT......3**

**III. ARGUMENT......4**

**PART ONE: THE MOTION TO STRIKE THE SECOND AMENDED AFFIRMATIVE DEFENSES SHOULD BE DENIED......4**

A. Rule 12(f) Relief Is Drastic and Disfavored, Fair Notice Is the Test, and the Trump Organization Still Shows No Prejudice......4

B. The Second Amended Answer Cured the Defects the Trump Organization Identified, and Its Own Filings Prove Fair Notice......5

C. *Park 'N Fly* and the Five-Year Rule Do Not Foreclose Defenses 4, 5, 8, 13, 14, or 15 as a Matter of Law......7

D. The Nineteenth Defense (Void Assignment) States a Cognizable Defense and Cannot Be Stricken as Insufficient as a Matter of Law......9

E. The Reclassified Denials and the Jurisdictional Defenses Should Not Be Stricken......10

F. The Equitable and Statutory Defenses Provide Fair Notice and Raise Fact Questions......11

G. There Is No Basis to Strike With Prejudice......13

**PART TWO: THE MOTION TO DISMISS THE SECOND AMENDED COUNTERCLAIMS SHOULD BE DENIED......14**

A. Incontestability Never Attached, So the Registrations Are Prima Facie Evidence Only and Section 1115(a) Preserves Every Challenge the Counterclaims Assert......14

B. The Section 15 Record Independently Defeats Incontestability as to the 2019 Registrations......16

C. The Cancellation Counts Rest on Grounds Congress Enumerated for Assertion "At Any Time" (Counts IX, X, and XII)......19

D. The Chain-of-Title Counts State a Cognizable Challenge the Five-Year Bar Does Not Foreclose (Counts XIII and XIV)......20

E. Count XV Pleads Fraud in Procuring the Registration With the Particularity Rule 9(b) Requires......22

F. The Declaratory Counts Are Not Redundant (Counts I, II, III, IV, and VIII)....23

G. The Abandonment Counts Plausibly State a Claim (Counts V, VI, VII, and XVI)......24

H. Counts XI and XII Present a Live, Concrete Controversy the Trump Organization Created......25

I. In the Alternative, Leave to Amend Should Be Granted......27

**IV. CONCLUSION ........................................................................ 27**

# TABLE OF AUTHORITIES

***Cases***

*Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225 (5th Cir. 2010)....................24

*Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862 (5th Cir. 1962).......4

*Bishop Glob. Fam. Tr. v. Mackie Wolf Zientz & Mann, P.C.*, No. 4:25-CV-00560, 2026 WL 922431 (S.D. Tex. Feb. 20, 2026)..........................................................5

*Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993)........................................23

*Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997).............................24

*Foman v. Davis*, 371 U.S. 178 (1962)..........................................................13, 27

*Garcia v. Glob. Dev. Strategies Inc.*, 44 F. Supp. 3d 666 (W.D. Tex. 2014)...................24

*Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333 (Fed. Cir. 2024).........................7, 18

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) ..........................................................................................25, 27

*In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009)..........................................................22

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir. 1982)..........................................................................................3, 4

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015 (5th Cir. 1996)............................16, 18

*LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394 (5th Cir. 2014).........................................5

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).............................................25

*NetJets Inc. v. IntelliJet Grp., LLC*, 678 F. App'x 343 (6th Cir. 2017)................10, 19, 21

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985)...........................passim

*Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990)...............................................18

*Rogers v. McDorman*, 521 F.3d 381 (5th Cir. 2008).........................................................5

*Sunrise Jewelry Mfg. Corp. v. Fred S.A.*, 175 F.3d 1322 (Fed. Cir. 1999).............8, 19, 26

*Texas v. United States*, 523 U.S. 296 (1998).....................................................................26

*United States v. Renda*, 709 F.3d 472 (5th Cir. 2013).......................................................4

*Webster v. Fall*, 266 U.S. 507 (1925)...............................................................................15

*Woodfield v. Bowman*, 193 F.3d 354 (5th Cir. 1999)...............................................passim

***Statutes and Rules***

15 U.S.C. § 1060(a)(1)..........................................................................9, 10, 21

15 U.S.C. § 1064..............................................................................8, 16, 19, 21

15 U.S.C. § 1065..............................................................................7, 15, 18, 26

15 U.S.C. § 1111...............................................................................................13

15 U.S.C. § 1115....................passim
15 U.S.C. § 1119....................passim
15 U.S.C. § 1127....................15, 19
Fed. R. Civ. P. 8....................6, 11
Fed. R. Civ. P. 9(b)....................22
Fed. R. Civ. P. 10(c)....................6
Fed. R. Civ. P. 12(b)(1)....................1, 11
Fed. R. Civ. P. 12(b)(6)....................1, 14, 21, 25
Fed. R. Civ. P. 12(f)....................passim
Fed. R. Civ. P. 12(h)....................11
Fed. R. Civ. P. 15(a)(2)....................13, 27

***Other Authorities***

37 C.F.R. § 2.106(b)(3)(i)....................17
37 C.F.R. § 2.167....................7, 17
TMEP § 1605.04 (May 2024)....................7, 17, 18

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants/Cross-Defendants MAGA Burger Holdings, LLC ("MBH"), Trump Burger LLC ("TBL"), Roland Beainy, MAGA Burger Bay City Inc., and MAGA Burger Victoria LLC (collectively, "Defendants" or the "Beainy Parties") file this single combined response in opposition to both halves of Intervenor Plaintiffs' (the "Trump Organization's") combined motion (ECF No. 105): Part IV, which moves under Federal Rule of Civil Procedure 12(f) to strike the Second Amended Affirmative Defenses (ECF No. 96, ¶¶ 150-168), and Part V, which moves under Rules 12(b)(6) and 12(b)(1) to dismiss the Second Amended Counterclaims (Counts I through XVI). Because the two halves are one filing directed at one integrated pleading and rest on one shared premise, Defendants respond in one document, with one table of contents and one table of authorities, and respectfully show the Court as follows.

## I. NATURE AND STAGE OF PROCEEDINGS

ECF No. 105 combines two motions directed at a single integrated pleading, the Second Amended Answer, Affirmative Defenses, and Counterclaims (ECF No. 96). Part IV moves to strike the Second Amended Affirmative Defenses; Part V moves to dismiss the Second Amended Counterclaims. Both halves rest on the same contested foundation: that the four MAKE AMERICA GREAT AGAIN registrations are incontestable, more than five years old, and therefore immune from the challenges the defenses and counterclaims assert. That foundation is disputed on the USPTO's own public record, and neither half can be resolved on the pleadings.

The motion to strike is the Trump Organization's third successive attack on the same defenses. It moved to strike the First Amended Affirmative Defenses in July 2026 (ECF No. 64), replied in support (ECF No. 73), and now, after the Beainy Parties amended those defenses in direct response to the three "recurring defects" the Trump Organization itself identified, renews the motion in combined form. The Second Amended Answer did exactly what the prior briefing demanded. It added a defined term, "Plaintiffs' Asserted Marks," and a rule of construction identifying the marks each defense addresses (ECF No. 96 ¶ 149); it incorporated by reference the detailed factual allegations of the counterclaims pleaded in the same document; and, where the Trump Organization complained that certain matters were denials rather than defenses, it reclassified five of them expressly as "specific denials and reservations" (id. ¶¶ 150, 155, 156, 161, 166). The Trump Organization now says these cures are themselves grounds to strike. They are not.

The motion to dismiss is likewise a renewed attack. The Trump Organization moved to dismiss the First Amended Counterclaims in July 2026 (ECF No. 67); Defendants opposed (ECF No. 85); and the Beainy Parties thereafter amended, with leave, to add detail and to plead additional counts drawn from the USPTO's recorded chain of title. The Second Amended Counterclaims are pleaded in the same document as the defenses, incorporate the agency's own file, and are the subject of pending written discovery served on the registrations' maintenance filings, chain of title, and licensing. The Court should deny both halves of the motion; in the alternative, it should grant leave to replead or amend rather than strike or dismiss with prejudice.

## II. SUMMARY OF THE ARGUMENT

**The motion to strike.** Striking a pleading is "generally disfavored" and a "drastic remedy," and in this Circuit the governing test is fair notice, not plausibility, as the Trump Organization's own authority concedes. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982); *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). There is no unfair surprise: every challenged defense is pleaded in the same document as fact-laden counterclaims the Trump Organization has itself briefed at length. The amendments cured the defects the Trump Organization identified, and the motion's centerpiece, that the defenses are "foreclosed as a matter of law" by incontestability and the five-year rule, raises contested questions of fact and unsettled questions of law that cannot be resolved on a Rule 12(f) motion. Nor is there any basis to strike with prejudice.

**The motion to dismiss.** Every argument in Part V is built on a single premise, that the registrations are incontestable and therefore immune from challenge except on Section 33(b) grounds. That premise fails on the USPTO's own records, which the Trump Organization invites the Court to notice. Incontestable status never attached, because no "mark" was in "continuous use" as a source identifier within the meaning of Section 15; the registrations are therefore prima facie evidence only, and Section 1115(a) preserves every defect and defense the counterclaims assert. The cancellation counts rest on grounds Congress enumerated for assertion "at any time," including abandonment and loss of source significance. The new chain-of-title counts present a question the Trump Organization's own non-binding authority shows is unsettled, and Count XIV turns on a

2025 assignment that no five-year bar reaches. The fraud count pleads the knowing, deceptive misrepresentation Section 14(3) requires. The declaratory counts are not redundant; they survive the Trump Organization's own settlement-and-default trajectory and address the registrations as such. The abandonment counts are measured by plausibility, not a trial burden. And the ripeness attack fails because the Trump Organization manufactured the very controversy it now calls contingent. At a minimum, each count is fact-bound or legally unsettled, and any deficiency is curable by amendment.

## III. ARGUMENT

## PART ONE: THE MOTION TO STRIKE THE SECOND AMENDED AFFIRMATIVE DEFENSES SHOULD BE DENIED

### A. Rule 12(f) Relief Is Drastic and Disfavored, Fair Notice Is the Test, and the Trump Organization Still Shows No Prejudice.

Rule 12(f) permits a court to strike "an insufficient defense," but the Fifth Circuit has long cautioned that motions to strike are "a drastic remedy to be resorted to only when required for the purposes of justice" and are "generally disfavored." *Augustus v. Board of Public Instruction of Escambia County*, 306 F.2d 862, 868 (5th Cir. 1962); *Kaiser Aluminum*, 677 F.2d at 1057. A defense may be stricken as insufficient only when it "cannot, as a matter of law, succeed under any circumstance." *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013). That standard is not met where a defense turns on contested facts or on an unsettled question of law.

The pleading standard is fair notice under *Woodfield*, not the *Twombly*/*Iqbal* plausibility standard. The Trump Organization's own briefing concedes that the Fifth Circuit "has not yet directly addressed" whether *Twombly* and *Iqbal* apply to affirmative

defenses and that courts in this Circuit "consistently" apply a "fair notice" standard. *Bishop Global Family Trust v. Mackie Wolf Zientz & Mann, P.C.*, No. 4:25-CV-00560, 2026 WL 922431, at *3 (S.D. Tex. Feb. 20, 2026). Fair notice "is met if the defendant sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise." *Woodfield*, 193 F.3d at 362; *see also Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008). In *Bishop* the court denied the motion: the movants "identif[ied] no unfair surprise," the pleader "need not disclose . . . every factual basis," and "the specifics can be fleshed out during discovery."

The Trump Organization answers our prejudice point by asserting that fair notice "encompasses prejudice or unfair surprise" and that the deficiency is its own prejudice. That is circular, and it is wrong on this record. Unfair surprise is the touchstone, *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014), and there is none: every challenged defense is pleaded in the same document as detailed counterclaims, and the Trump Organization has briefed each theory on the merits across dozens of pages, including the fifty-page motion-to-dismiss half of this very filing. Where the movant shows no prejudice beyond the asserted insufficiency itself, the proper course is to deny the motion and test the defenses on a full record.

**B. The Second Amended Answer Cured the Defects the Trump Organization Identified, and Its Own Filings Prove Fair Notice.**

The Trump Organization's prior briefing pressed three "recurring defects": that the defenses did not identify the marks; that they lacked factual particularity; and that several were denials mislabeled as defenses. The Second Amended Answer addressed each.

**Which marks.** Paragraph 149 now defines "Plaintiffs' Asserted Marks" and supplies a rule of construction under which each defense is directed at every asserted mark unless otherwise stated, and the individual defenses identify the registrations by number (e.g., ECF No. 96 ¶¶ 153, 157, 164). The Trump Organization's response, that identifying the marks only "confirms" the defenses are foreclosed, concedes that the first defect is cured and shifts the debate to the merits, which Part One.C addresses.

**Factual particularity.** The defenses now incorporate by reference the counterclaims' detailed allegations pleaded in the same document. Rule 10(c) permits a statement in a pleading to be "adopted by reference elsewhere in the same pleading," and that is what the Second Amended Answer does. Reading a pleading "as a whole," as Rule 8(e) requires, the particulars the Trump Organization says are missing appear in the integrated pleading. The complaint that incorporation "does not supply the elements" of a defense again attacks the merits, not notice: *Woodfield* requires fair notice of the defense, not proof of it.

**Reclassified denials.** Where the Trump Organization argued that certain paragraphs were denials rather than affirmative defenses, the Beainy Parties agreed and relabeled them as "specific denials and reservations" (ECF No. 96 ¶¶ 150, 155, 156, 161, 166). Having obtained the very relabeling it sought, the Trump Organization now says the reservations are "redundant" and should be stricken anyway. But striking a correct, clarifying reservation accomplishes nothing and prejudices no one: the elements these paragraphs address remain the Trump Organization's burden either way, and a reservation that candidly identifies a matter as a denial advances, rather than obscures, the orderly framing

of the issues. Rule 12(f) is not an instrument for tidying a pleading that has already been clarified at the movant's request.

**C. *Park 'N Fly* and the Five-Year Rule Do Not Foreclose Defenses 4, 5, 8, 13, 14, or 15 as a Matter of Law.**

The motion's central theme is that the failure-to-function, no-trademark-use, exclusivity, First Amendment, scope, and incontestability defenses are "foreclosed" because the MAKE AMERICA GREAT AGAIN registrations are incontestable and more than five years old, so that under *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985), they cannot be challenged. That argument fails at the threshold of a Rule 12(f) motion for several independent reasons.

First, the incontestability premise is disputed, and the USPTO's own records contradict it. Incontestable status is a creature of statute, conditioned on the absence of any "proceeding involving said rights . . . pending and not finally disposed of." 15 U.S.C. § 1065(2). The Section 15 declaration for Registration No. 5,885,602 was filed on April 14, 2026, executed by the Trump Organization's counsel, declaring that no such proceeding was pending. (Ex. A.) Nine days later, a compulsory counterclaim seeking cancellation of that very registration was filed and remains pending; on May 14, 2026, the USPTO refused the Section 15 filing for exactly that reason, citing 37 C.F.R. § 2.167 and TMEP § 1605.04. (Ex. B.) Whether incontestable status ever lawfully attached is the merits question at the heart of Defense 15; it cannot be resolved against Defendants on a motion to strike. *See Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333 (Fed. Cir. 2024) (treating the validity of incontestable status as distinct from the validity of the underlying registration). Because

the incontestability premise is contested, every argument that depends on it, including the attacks on Defenses 4, 5, 8, and 13, fails with it.

Second, *Park 'N Fly* does not do the work the motion assigns it. *Park 'N Fly* was decided on summary judgment, on a full record, and held only that "mere descriptiveness" is not available to defeat an incontestable mark. 469 U.S. at 196. It did not authorize striking a defense at the pleading stage, and it expressly preserved the Section 33(b) defenses and the Section 14(3) grounds. 15 U.S.C. § 1115(b). Defendants' defenses are not a "mere descriptiveness" challenge.

Third, the defenses the motion targets remain available against an incontestable, over-five-year registration. Genericness and failure to function may be raised at any time, notwithstanding incontestability: a registration "shall" be cancelled "at any time" if the registered matter is functional or the mark has become generic, 15 U.S.C. § 1064(3), and the Federal Circuit has held that functional (and, a fortiori, non-functioning) matter is subject to cancellation at any time regardless of incontestable status. *Sunrise Jewelry Manufacturing Corp. v. Fred S.A.*, 175 F.3d 1322, 1326-27 (Fed. Cir. 1999). Abandonment is both an enumerated Section 33(b) defense, 15 U.S.C. § 1115(b)(2), and a Section 14(3) ground available at any time. And the district court's power to cancel under 15 U.S.C. § 1119 is broader than, and independent of, the posture the Trump Organization describes. Defense 4 pleads that the phrase does not function as a mark and is informational and ornamental; Defense 8 pleads the absence of substantially exclusive use; Defense 15 pleads that incontestable status never attached. Each ties to a ground the Lanham Act keeps open.

Fourth, and dispositively for Rule 12(f), these are contested questions of fact and of unsettled law. Whether the phrase functions as a source identifier on the goods, whether the marks have been abandoned, and whether incontestability attached are quintessential merits questions. The Trump Organization's own motion to dismiss briefs them at length; they are not resolvable by striking a defense from a pleading.

**D. The Nineteenth Defense (Void Assignment) States a Cognizable Defense and Cannot Be Stricken as Insufficient as a Matter of Law.**

The new Nineteenth Defense pleads that CIC is not the owner of Registration Nos. 5,885,602 and 5,921,166 because the 2015 and 2016 assignments of the underlying intent-to-use applications violated 15 U.S.C. § 1060(a)(1), which bars the assignment of an intent-to-use application before a statement of use "except . . . to a successor to the business of the applicant . . . if that business is ongoing and existing." The defense rests on specific facts drawn from the USPTO's own recorded chain of title: a March 16, 2016 instrument (Reel/Frame 5752/0967) by which Donald J. Trump, individually, purported to assign both applications to Donald J. Trump for President, Inc. in exchange for "100% of the interests" in a nonstock nonprofit corporation that has no such interests, conveying recited goodwill but no business, assets, or operations (Ex. E); and an October 23, 2015 instrument (Reel/Frame 5655/0279) of the same character (Ex. F). These particulars are pleaded, and they are matters of public record of which the Trump Organization itself has invited judicial notice.

The motion says the defense is "foreclosed by statute" because a registration more than five years old may be cancelled only on Section 14(3) grounds, which do not include a

"void ab initio" theory. The Trump Organization's own authority refutes the claim that this is settled. Its lead case is an unpublished Sixth Circuit opinion, *NetJets Inc. v. IntelliJet Group, LLC*, 678 F. App'x 343 (6th Cir. 2017), and the question it addresses divides courts and commentators. A defense cannot be "insufficient as a matter of law" under Rule 12(f) when the governing law is unsettled and non-binding. Independently, Section 1115(b) makes an incontestable registration conclusive evidence of ownership only "subject to" the enumerated defenses, and Section 1119 authorizes a district court, "in any action involving a registered mark," to order cancellation, a power broader than the Section 14 grounds that govern a Board cancellation petition. Whether a registration whose chain of title is void under Section 1060(a)(1) ever validly existed, such that the five-year repose never attached, is precisely the kind of unsettled, fact-bound question that cannot be decided by striking the defense.

The Trump Organization's remaining point, that Magistrate Judge Edison struck the Beainy Parties' requests for admission so "this part of the defense should be disregarded," proves Defendants' point rather than its own. The order striking discovery requests has no bearing on whether a defense is adequately pleaded; the Nineteenth Defense stands on the recorded assignments, not on any request for admission. And the Trump Organization's insistence that the defense's premise is "untrue" is a merits dispute of fact, which is improper on a Rule 12(f) motion and confirms that the defense cannot be resolved at the pleading stage.

**E. The Reclassified Denials and the Jurisdictional Defenses Should Not Be Stricken.**

**Defenses 1, 6, 7, 12, and 17 (failure to state a claim; no likelihood of confusion; no dilution; no false suggestion of connection; no willfulness).** Having asked the Beainy Parties to treat these as denials, the Trump Organization received exactly that: each is now pleaded as a "specific denial and reservation." The remedy for a matter pleaded under the wrong heading is to treat it as what it is, not to strike it. Fed. R. Civ. P. 8(c)(2), 8(e). Striking changes nothing: confusion, dilution, and willfulness remain the Trump Organization's burden, and express notice that scienter is contested serves the purpose of Rule 8(c), given the Trump Organization's demands for enhanced remedies, profits, and fees. Failure to state a claim is, in any event, preserved through trial by Rule 12(h)(2).

**Defenses 2 and 3 (subject-matter jurisdiction; standing).** Striking these accomplishes nothing because subject-matter jurisdiction can be raised at any time and never waived, Fed. R. Civ. P. 12(h)(3), and standing is an element the Trump Organization must establish throughout. Paragraph 151 now identifies the target, the Section 1119 relief sought against pending Application Serial Nos. 99135657 and 99135667, and refers the Court to Defendants' pending Rule 12(b)(1) motion (ECF No. 42); paragraph 152 identifies concrete standing problems, including Trump Wine Marks' assertion of wine and cider marks against restaurant defendants and the absence of injury attributable to entities that never operated. Whether these are best characterized as denials or defenses, they give fair notice of the jurisdictional and standing issues already joined in this case.

**F. The Equitable and Statutory Defenses Provide Fair Notice and Raise Fact Questions.**

**Defense 9 (abandonment).** The defense identifies all three statutory theories, loss of significance, failure to police, and naked licensing, and incorporates the counterclaim allegations that develop them. The Trump Organization's response, that the evidence will not ultimately prove abandonment and that related-company use inures to the registrant, argues the merits and the trial burden; it does not show that the defense fails to give notice. Abandonment is an enumerated Section 33(b) defense and a Section 14(3) ground, and whether the marks have lost significance, gone unpoliced, or been licensed without control are fact questions for a developed record.

**Defenses 10 and 11 (estoppel, acquiescence, and unclean hands).** These defenses plead specific conduct, the Trump Organization's encouragement, toleration, or selective acceptance of widespread third-party political use of MAGA and MAKE AMERICA GREAT AGAIN, and its years of non-enforcement against the open and continuous operation of TRUMP BURGER restaurants on which the Beainy Parties relied. Whether that conduct satisfies every element the Trump Organization recites is a merits question; at the pleading stage, the defenses are far from the "bald one-word" listings *Woodfield* condemns, and they give ample notice.

**Defense 16 (failure to mitigate).** The amendment deleted the administrative-exhaustion language the Trump Organization attacked and now rests on the Trump Organization's awareness of the Beainy Parties' applications and restaurants well before it acted. Whether that bears on mitigation, laches, or the scope of recoverable relief is a fact question; it is not "insufficient as a matter of law."

**Defense 18 (lack of statutory notice under 15 U.S.C. § 1111).** This remains the most detailed defense in the pleading. It identifies the registrations, recites both statutory prongs, and states the precise consequence: no monetary recovery for infringement preceding actual notice. The marking practices of the Trump Organization and its licensees are facts peculiarly within its knowledge; pleading them on information and belief with this specificity is what fair notice contemplates, and Defendants' pending discovery addresses them directly.

**G. There Is No Basis to Strike With Prejudice.**

The Trump Organization asks the Court not merely to strike but to strike with prejudice, invoking the futility and "repeated failure to cure" language of the leave-to-amend standard. The request is unfounded. Leave to amend is to be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), and denial is the exception, warranted only on a substantial reason such as bad faith, undue delay, or futility, *Foman v. Davis*, 371 U.S. 178, 182 (1962). None is present. The Beainy Parties amended in direct response to the Trump Organization's own itemized deficiency contentions, which is the ordinary and intended use of amendment, not evidence of bad faith; and the fact that the Trump Organization still disagrees with the amended defenses does not make further amendment "futile."

The Trump Organization's argument that the operative facts were "public since May" cuts against it. If the defenses turn on facts, whether the marks function as source identifiers, whether they have been abandoned, whether the chain of title is valid, then they are fact-dependent defenses, not legal nullities, and striking them with prejudice at the

pleading stage is improper. Where a defense could be cured by repleading, the remedy is leave to replead, not dismissal with prejudice; and where, as here, the defenses are adequately pleaded, no repleading is needed at all.

## PART TWO: THE MOTION TO DISMISS THE SECOND AMENDED COUNTERCLAIMS SHOULD BE DENIED

On a Rule 12(b)(6) motion the Court accepts the counterclaims' well-pleaded allegations as true and draws all reasonable inferences in the pleaders' favor; it does not weigh evidence or resolve disputed facts. Part V ignores that posture at every turn. Its entire architecture rests on a single premise, that the four MAKE AMERICA GREAT AGAIN registrations are incontestable and, in all events, immune from challenge under the five-year bar of Section 14. That premise is contradicted by the USPTO's own records, and even where it is not, it does not reach the grounds the counterclaims actually invoke.

### A. Incontestability Never Attached, So the Registrations Are Prima Facie Evidence Only and Section 1115(a) Preserves Every Challenge the Counterclaims Assert.

The motion's controlling syllogism runs as follows: the registrations are incontestable; the challenges the counterclaims assert are not among the defenses enumerated in Section 33(b), 15 U.S.C. § 1115(b); therefore every count is "foreclosed" under *Park 'N Fly*. The syllogism skips the statute's first step. *Park 'N Fly* holds "that the holder of a registered mark may rely on incontestability to enjoin infringement and that such an action may not be defended on the grounds that the mark is merely descriptive." 469 U.S. at 205. That holding governs what may be argued against a mark whose incontestable status exists. It says nothing about whether incontestable status ever attached,

and attachment is governed by Section 15's own terms: the right becomes incontestable only where "such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce." 15 U.S.C. § 1065.

"Mark" is a defined term, and the definition is functional. A trademark is matter "used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. Continuous use of a registered mark therefore means continuous use as a mark, that is, continuous source-identifying use. *Park 'N Fly* could not have decided that question, because no one raised it: no party there disputed that PARK 'N FLY had been used as a mark for the parking services it named, and the entire dispute was whether the term was merely descriptive. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925). The Second Amended Counterclaims plead, in specimen-level detail drawn from the Trump Organization's own USPTO filings, that MAKE AMERICA GREAT AGAIN has functioned since 2015 as the ubiquitous slogan of a national political movement, displayed large, centered, and outward-facing on the goods, while a different brand, AHEAD AMERICANA, on the interior tag performs the source-identifying work. Taken as true, those allegations mean that no "mark" was in "continuous use" within the meaning of Section 1065 and that incontestable status never attached to any of the four registrations, whatever ministerial acknowledgments later

issued. Failure to function is not a missing entry on Section 33(b)'s list; it is the failure of incontestability's premise.

The consequence is dispositive of the motion's framing. A registration that has not attained incontestable status is "prima facie evidence" only, and Section 1115(a) expressly provides that it "shall not preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b), which might have been asserted if such mark had not been registered." 15 U.S.C. § 1115(a). The declaratory counts directed to source-identifying use, ornamentality, and the scope of any rights (Counts I, IV, VIII) assert exactly such defects and defenses; they are not cancellation claims, and the five-year architecture of Section 1064 does not speak to them. The Trump Organization's argument that these counts are "foreclosed" by conclusive-evidence status presupposes the incontestability the record refutes, and that premise cannot support dismissal, let alone dismissal with prejudice.

**B. The Section 15 Record Independently Defeats Incontestability as to the 2019 Registrations.**

As to Registration Nos. 5,885,602 and 5,921,166, the USPTO's own file supplies a second, independent reason incontestable status never attached. The Trump Organization attaches the agency's Section 15 acknowledgments and invites the Court to take judicial notice of the USPTO's public records. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). Defendants agree the Court may notice those records, all of them. The complete record for Registration No. 5,885,602 shows that the combined Section 8 and 15 declaration was filed on April 14, 2026, during the six-month statutory grace period and

one day before it closed, executed by the Trump Organization's own counsel of record, declaring that no proceeding involving the claimed rights was pending in the USPTO or in a court. (Ex. A.) At that moment four such proceedings were pending, a joint opposition pleading the registration (Opposition No. 91305407), two cancellation petitions, and this action, three of them commenced by the Trump Organization itself, all through the same counsel who signed the declaration.

Nine days later, on April 23, 2026, while the declaration awaited review, MBH filed the compulsory counterclaim seeking cancellation of Registration No. 5,885,602 that the Trump Organization's own opposition had made compulsory, 37 C.F.R. § 2.106(b)(3)(i); it remains pending and not finally disposed of to this day. (Ex. D.) The USPTO treated the registration as what it was, a mark whose validity was being litigated. On May 13, 2026, it denied a Section 7 request for Registration No. 5,885,602 because the registration was the subject of a pending inter partes proceeding, while granting the same day a parallel Section 7 request for a different registration not subject to any such proceeding. (Ex. C.) And on May 14, 2026, the USPTO refused the Section 15 filing for precisely that reason: "Counterclaim in Record . . . The pending court proceeding contradicts this claim," citing 37 C.F.R. § 2.167 and TMEP § 1605.04, and invited a new filing once all statutory claims could truthfully be made. (Ex. B.)

The June 29, 2026 acknowledgment on which the motion rests then issued with nothing in the record changed: no responsive filing, no withdrawal of the counterclaim, no disposition of any proceeding. Under the agency's own standard it should not have issued. TMEP § 1605.04 provides that where a proceeding involving the owner's rights is

instituted after a Section 15 declaration is filed but before the USPTO reviews it, the agency will not acknowledge the declaration, and the owner must refile once the proceeding is finally disposed of. The acknowledgment is in any event ministerial; it adjudicates nothing and cannot confer a status whose statutory conditions were not met. *Cf. Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) ("[a]ny false statements made in an incontestability affidavit may jeopardize not only the incontestability claim, but also the underlying registration"). Judicial notice of the acknowledgment cannot extend to the truth of the statutory conditions it presupposes, conditions the same file shows the agency itself found unsatisfied six weeks earlier. *Lovelace*, 78 F.3d at 1017-18. The complete file cuts against the motion, not for it.

The declaration was not true when signed, either. Section 1065(2) conditions incontestability on there being "no proceeding involving said rights pending in the United States Patent and Trademark Office or in a court and not finally disposed of," 15 U.S.C. § 1065(2), and draws no distinction based on who commenced the proceeding. Four proceedings involving the claimed rights were pending on April 14, 2026, each asserting or contesting the registration. To the extent TMEP § 1605.04 reads an owner-as-plaintiff qualification into the statute, the manual is examination guidance, not law, and cannot narrow the text Congress enacted. That a defective Section 15 declaration may defeat incontestable status without defeating the registration itself is settled. *Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333, 1339-40 (Fed. Cir. 2024). Whether incontestable status ever attached to these registrations is, at a minimum, a disputed question of fact and law that

cannot be resolved on the Trump Organization's own motion, and it is dispositive of the conclusive-evidence premise on which Part V depends.

**C. The Cancellation Counts Rest on Grounds Congress Enumerated for Assertion "At Any Time" (Counts IX, X, and XII).**

The Trump Organization argues that, five years after registration, cancellation lies only on the grounds enumerated in Section 1064(3), and that "failure to function" is not among them. Defendants do not ask the Court to cancel on an unenumerated ground. As to Counts IX and X, the factual core, that the Trump Organization's own conduct and manner of use caused the phrase to cease functioning as a source identifier for the identified goods, is the statutory definition of abandonment: a mark is abandoned "[w]hen any course of conduct of the owner . . . causes the mark . . . to lose its significance as a mark." 15 U.S.C. § 1127. Abandonment is an enumerated ground assertable "at any time." 15 U.S.C. § 1064(3). A pleading is tested by its substance, not its caption; whether labeled "failure to function" or "abandonment by loss of significance," the allegations state a ground Congress kept open.

Genericness supplies a second enumerated, at-any-time ground. The Federal Circuit reads the "generic name" language of Section 1064(3) "expansively to encompass anything that has the potential but fails to serve as an indicator of source," and holds that such matter is subject to cancellation at any time regardless of incontestable status. *Sunrise Jewelry*, 175 F.3d at 1326-27. The non-source-identifying matter the counts attack falls squarely within that reading. The Trump Organization's contrary authority does not bind this Court: *NetJets* is an unpublished, out-of-circuit decision, and the district-court recommendation

on which the motion leans is an unpublished magistrate's report; neither displaces the grounds Congress enumerated. And because incontestability never attached (Part Two.A), nothing in *Park 'N Fly*'s statement that the Section 1119 cancellation power is "subject to" the incontestability provisions, 469 U.S. at 203, constrains the Court here: where incontestable status never arose, there is no incontestability provision to which that power must yield.

At a minimum, whether the phrase functions as a source identifier on the registered Class 18 and 25 goods, and whether the Trump Organization's own conduct caused any loss of significance, are quintessential fact questions. They cannot be resolved against the pleaders on a motion to dismiss, still less with prejudice on a record consisting of the USPTO's own file while discovery directed to it is under way. Count XII, which seeks cancellation of whichever registrations the Court finds not incontestable, fails for none of the reasons the motion gives and is addressed further in Part Two.H below.

**D. The Chain-of-Title Counts State a Cognizable Challenge the Five-Year Bar Does Not Foreclose (Counts XIII and XIV).**

Counts XIII and XIV rest on the USPTO's recorded chain of title. By an instrument executed March 16, 2016 (Reel/Frame 5752/0967), Donald J. Trump, an individual, assigned the Section 1(b) intent-to-use applications underlying both Registration Nos. 5,885,602 and 5,921,166 to Donald J. Trump for President, Inc. years before any statement of use, in exchange for "100% of the interests" in a nonstock nonprofit corporation that has no such interests, conveying recited goodwill but no business, assets, or operations (Ex. E); an earlier instrument of the same character (Reel/Frame 5655/0279) conveyed the

applications on October 23, 2015 (Ex. F). Section 10 forbids such a pre-use assignment "except for an assignment to a successor to the business of the applicant . . . if that business is ongoing and existing." 15 U.S.C. § 1060(a)(1). Whether that exception was satisfied is, at minimum, a disputed question that cannot be resolved against the pleaders on a motion to dismiss.

The Trump Organization answers that a "void ab initio" theory is not enumerated in Section 14(3) and is therefore time-barred after five years. Its own authority shows the question is unsettled. The lead case is the unpublished, out-of-circuit *NetJets*, and the district-court decision the motion quotes is an unpublished magistrate's report that itself acknowledged the opposing view, that "it would appear that a void registration could be cancelled at any time," before declining to follow it. Whether the five-year repose of Section 1064 attaches to a registration that "never lawfully issued" is a genuinely contested question of law (ECF No. 96 ¶ 138), and a count cannot be dismissed with prejudice under Rule 12(b)(6) where the controlling law is unsettled and the pleaded facts, the recorded assignments, are taken as true.

Two further points defeat dismissal independently of that debate. First, Count XIV does not depend on cancelling the 2019 registrations at all; it turns on the January 16, 2025 assignment to CIC, and asks the Court to declare that CIC "does not own" the registrations and "may not maintain claims founded on them," or, alternatively, that the 2025 conveyance was an assignment in gross. Whether CIC validly owns the marks is a 2025 question that no five-year bar on cancellation touches, and it is in any event an element the Trump Organization must establish to maintain its own affirmative claims. Second,

because incontestability never attached, Section 1115(a) preserves the ownership defect as a "defect . . . which might have been asserted if such mark had not been registered." 15 U.S.C. § 1115(a). Dismissal with prejudice on the pleadings, on the USPTO's own recorded file and before any discovery into the 2015, 2016, and 2025 transactions, would be improper.

**E. Count XV Pleads Fraud in Procuring the Registration With the Particularity Rule 9(b) Requires.**

Count XV seeks cancellation of Registration No. 5,921,166 as obtained by fraud. The Trump Organization argues that the count pleads only a lack of bona fide intent to use, targets non-party applicants, and fails Rule 9(b). The pleading answers each objection. It alleges that the named applicants knowingly made a false, material representation, the verified averment of a bona fide intention to use the mark required of every Section 1(b) applicant, and that they did so "with intent to deceive the USPTO." (ECF No. 96 ¶ 149.) That is the knowing, deceptive misrepresentation that fraud requires, not mere negligence. *See In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009). Rule 9(b) itself provides that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," and the counterclaims supply the particulars of the circumstances, who (the named applicants), what (the sworn averment of bona fide intent), when (the August 5, 2015 application), where (the intent-to-use application for the mark), and how (the applicants in fact lacked the requisite intent, as the sequence of their conduct shows).

The Trump Organization's remaining objections go to the merits, not the sufficiency of the pleading. Whether the applicants' fraud in the verified application taints the

registration that issued on it, and whether the clear-and-convincing standard is ultimately met, are questions for a developed record, not for a motion to dismiss that must take the allegations as true. Fraud in procurement is, moreover, an enumerated Section 14(3) ground assertable at any time, so the five-year bar the motion invokes elsewhere does not reach it. If the Court nonetheless concludes that more particularity is required, the remedy is leave to amend, not dismissal with prejudice.

**F. The Declaratory Counts Are Not Redundant (Counts I, II, III, IV, and VIII).**

Dismissal of declaratory counterclaims as "mirror images" is discretionary, and the discretion should not be exercised here. First, a counterclaim survives events that extinguish a plaintiff's claim. The Trump Organization has told the Court that it has settled with multiple parties and taken defaults against others, and that others remain "in the process of settling." On that trajectory, nothing but the counterclaims guarantees that the validity and scope questions the Trump Organization has put in issue will actually be adjudicated rather than abandoned when convenient. The Supreme Court has recognized the strong public interest in resolving validity challenges notwithstanding the disposition of the infringement side of a case. *Cardinal Chemical Co. v. Morton International, Inc.*, 508 U.S. 83, 99-102 (1993).

Second, the counts are not coextensive with the Trump Organization's claims. They address the registrations and goods as such, including the maintenance filings, the incontestability status, and the recorded chain of title, not merely whether the Beainy Parties' particular accused conduct infringes. Resolving the infringement claims will not necessarily resolve those registration-level questions, which is the test the Trump

Organization's own authority applies. Third, as to Count II, the count does not "conflate" the elements of infringement. It pleads, in the alternative, that even assuming valid and enforceable rights, confusion is not plausible between outward-facing political merchandise and the parties' respective goods and services, a distinct and independently dispositive question. Ownership of a valid mark and likelihood of confusion are separate elements, *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235-36 (5th Cir. 2010), and pleading the confusion element in the alternative is proper, not a basis for dismissal.

**G. The Abandonment Counts Plausibly State a Claim (Counts V, VI, VII, and XVI).**

The Trump Organization measures the pleading against the "stringent" trial burden for proving abandonment. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1079-80 (5th Cir. 1997). But a clear-and-convincing trial burden is not a pleading standard; at this stage the question is plausibility. The counts do not merely recite labels. They plead the specific mechanism by which source significance was lost, the deliberate transformation of the phrase into the name of a national political movement; specific marketplace evidence, the Trump Organization's own specimens, with the phrase as dominant outward-facing display and a separate interior brand performing the source-identifying function; a tolerated landscape of third-party use; and licensing without meaningful quality control. *Garcia*, the Trump Organization's own authority, sustained an abandonment counterclaim on comparable allegations. *Garcia v. Global Development Strategies Inc.*, 44 F. Supp. 3d 666, 672 (W.D. Tex. 2014).

The Trump Organization's argument that Counts VI, VII, and XVI "entirely rest" on requests for admission that Magistrate Judge Edison struck mistakes the office of a motion to dismiss. Striking discovery requests does not delete the factual allegations of a pleading; a Rule 12(b)(6) motion tests the well-pleaded allegations as they stand, and these counts plead marketplace and licensing facts independent of any admission. Allegations of licensing arrangements and quality-control practices are, moreover, properly made on information and belief, because the licenses and any quality-control records are within the Trump Organization's exclusive possession and are the subject of served discovery. That is equally true of Count XVI, which alleges that DTTM licenses the TRUMP restaurant mark to operators it does not control; the existence of licenses coupled with the absence of any disclosed quality control states a plausible naked-licensing claim, and whether meaningful control in fact existed is a fact question. If the Court concludes that any abandonment count requires additional particularity, the Beainy Parties stand ready to supply it by amendment, an opportunity to which they are entitled. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

### H. Counts XI and XII Present a Live, Concrete Controversy the Trump Organization Created.

The declaratory-judgment inquiry asks whether there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). There is nothing hypothetical here. The Trump Organization has affirmatively asserted incontestable status for the registrations in multiple filings in this Court, attached the USPTO

acknowledgments, and rested its arguments, including both halves of ECF No. 105, on "conclusive evidence" status. Whether that status exists is now the pivotal, presently disputed question in the case. *Texas v. United States*, 523 U.S. 296, 300 (1998), addresses claims resting on "contingent future events"; a status the Trump Organization asserts today, in this case, as the basis for dismissing these very counterclaims, is not a future event. The Trump Organization cannot invoke incontestable status to defeat the counterclaims and, in the same breath, contend that a challenge to that status is unripe.

Count XI does not fail "on its own terms." The Trump Organization's reliance on *Sunrise Jewelry*'s holding that there is no continuing duty to update a Section 15 declaration answers only the "pending proceeding" condition; it does not touch the other two conditions on which Count XI rests, that no "mark" was used as a source identifier (the Section 1065 "continuous use" condition addressed in Part Two.A) and that CIC was not the owner (the chain-of-title defect addressed in Part Two.D). Those conditions present live questions of fact and unsettled law. And Count XII is not an "advisory" request: its contingency is the Trump Organization's own doing, because the Trump Organization put incontestability in issue, and a declaration resolving a status the movant presently asserts as a ground for dismissal is the opposite of an opinion on a hypothetical. The Trump Organization's position is also difficult to square with its own pleading, which asks this Court under Section 1119 to direct the USPTO to refuse two of Defendants' applications that remain in examination; a party invoking Section 1119 to shape the register cannot treat Defendants' mirror-image invocation of the same provision as unripe. Ripeness objections should cut in one direction.

**I. In the Alternative, Leave to Amend Should Be Granted.**

If the Court concludes that any count requires additional detail, the remedy is leave to amend, not dismissal with prejudice. Leave is to be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962), and this Circuit affords "at least one opportunity to cure pleading deficiencies before dismissing." *Great Plains*, 313 F.3d at 329. Dismissal with prejudice would be particularly inappropriate here, where the governing record is the USPTO's own file, where the dispositive questions are fact-bound or legally unsettled, and where discovery directed to the registrations' use, maintenance, chain of title, and licensing is under way.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Trump Organization's motion to strike the Second Amended Affirmative Defenses in its entirety and deny its motion to dismiss the Second Amended Counterclaims in its entirety; in the alternative, grant Defendants leave to replead any defense and to amend any counterclaim the Court finds insufficiently pleaded, with any dismissal to be without prejudice; and grant all other relief to which Defendants are justly entitled.

Dated: November 17, 2026

Respectfully submitted,

/s/ Michael Spradley
Michael Spradley
Texas Bar No. 24067881
S.D. Tex. No. 1206455
BAYOU IP PLLC
1220 Augusta Dr., Suite 174, Houston, Texas 77057
Tel: (713) 728-3687 | Email: michael@bayouip.com
ATTORNEY FOR DEFENDANTS/CROSS-DEFENDANTS

**CERTIFICATE OF SERVICE**

I certify that on November 17, 2026, a true and correct copy of the foregoing was filed and served on all counsel of record through the Court's CM/ECF system.

/s/ Michael Spradley
Michael Spradley